## A. S. JOHNSON V. A. A. HOLLAND ET AL.

Delivered November 13, 1897.

**1. Taxation—Excessive Assessment—Fraud—Remedy.**

A taxpayer whose property has been fraudulently and corruptly fixed by the board of equalization at much more than its actual value, while the property of other taxpayers has been fixed at much less than its actual value, has a remedy in the courts of the State.

**2. Same—Board of Equalization—Power—Fraud.**

The act of the board of equalization in corruptly and fraudulently raising the value of the property of one taxpayer far above its actual value, and in placing that of other taxpayers at much less than its actual value, is fraudulent and void, under the State Constitution, notwithstanding the statutory provision that the official acts of such board shall be final.

**3. Same—Fraud—Action.**

An action to set aside for fraud an order of the board of equalization raising the value of a taxpayer's assessment far above its actual value, is the proper remedy where such action of the board was due to corrupt and fraudulent motives.

APPEAL from Carson. Tried below before Hon. B. M. BAKER.

*H. E. Hoover*, for appellant.—1. Appellant's original petition is sufficient in law, and states a good cause of action within the jurisdiction of the court. Graham v. Lasater, 26 S. W. Rep., 472; Red v. Johnson, 53 Texas, 248; Rosenberg v. Weeks, 4 S. W. Rep., 899; Davis v. Burnett, 13 S. W. Rep., 613; Galveston County v. Gas Co., 10 S. W. Rep., 583; Duck v. Peeler, 11 S. W. Rep., 1111; Coke v. Railway, 24 S. W. Rep., 544; Mfg. Co. v. Charlton, 32 Fed. Rep., 192; Hill v. Bank, 105 U. S., 319.

2. Equity will enjoin the collection of taxes when the petition alleges a state of facts showing that the board of equalization acted fraudulently or arbitrarily in fixing the values, and all that need be alleged are facts showing that the board acted arbitrarily and against all evidence. 2 Desty on Tax., pp. 681, 656, 1433; 25 Am. and Eng. Encyc. of Law, pp. 259, 262; Tainter v. Lucas Co., 29 Wis., 375; 10 Am. and Eng. Encyc. of Law, 692; Dean v. Davis, 51 Cal., 407.

*Plemons & Veale*, for appellees.—The fact that plaintiff set up in his petition fraud on the part of the Commissioners Court, or fraudulent acts on the part of members of said court, does not in any manner change or modify the rule. If the court was without jurisdiction to hear and determine the question of value as complained of in plaintiff's petition, then we submit that the alleged fraudulent conduct of said court would in nowise affect the question. Rev. Stats., art. 5124; Const., art. 5, sec. 8; Railway v. Smith, 54 Texas, 1; Galveston v. Gas Co., 72 Texas, 509; Duck v. Peeler, 74 Texas, 268; 4 Am. and Eng. Encyc. of Law, p. 368; Stanley v. Supervisors, 121 U. S., 535; State v. Daugherty, 5 Texas, 1.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought February 8, 1897, in the District Court of Carson County, by the appellant against

the county of Carson, J. J. Ivers, County Judge, and the other members of the Commissioners Court of said county, and against A. A. Holland, tax collector of said county, to annul and set aside a certain order made by the said judge and county commissioners while sitting as a board of equalization, in June, 1896, and in which the said board raised the value of appellant's 19,840 acres of unimproved lands, as assessed by his agent to the tax assessor of said county under oath, from $44,740 to $66,960, and some town lots at Panhandle, the county seat of Carson County, from $2796 to $14,196, whereby his taxes for 1896 were raised and increased from $682.90 to $1032.33, making, as claimed, an unjust charge against him in the taxes of that year of $352.43.

It is averred in the petition that the lands and lots had been assessed by appellant's agent to the tax assessor at their true cash value, and at more than they could possibly be sold for or were worth on the 1st day of January, 1896, or at any time thereafter; that at said date there was no market or sale for said lands and lots or either of them, and that appellant would at said date or at any time since have sold the same for even less than the amount at which the same were assessed. That said board of equalization arbitrarily and fraudulently raised the value on said lands and lots as above stated, well knowing that the value placed thereon by said board was more than the lands and lots were worth; that said board fixed the value of cattle rendered and assessed in said county for taxes for said year at less than 50 per cent of their actual cash value on the 1st day of January, 1896, which he alleges to be an illegal and unjust discrimination against him. He also alleges that he appeared before said board by his agent, and that said agent testified to said facts as above stated, and that no other evidence was offered or heard by said board, and that after hearing said evidence, and while considering and discussing the valuation of plaintiff's said lands and town lots, and before final action thereon, "one of the members of said board, in the presence of the other members, stated and said in effect that they (meaning said board) knew that plaintiff's said lands and town lots could not be sold at the price at which plaintiff had rendered the same for taxes, but that it was necessary to fix the value to which they were raised in order to obtain revenue to defray the running expenses of the county." These are substantially the facts stated upon which the allegation of fraud is predicated.

Plaintiff tendered and paid into court the sum of $682.90, the amount of taxes due according to the assessment made by him to the assesssor, and prayed that the order of the board of equalization raising the valuation of his said property be declared void, and for an injunction compelling the tax collector to accept the amount paid into court in full of his taxes for 1896, and restraining and perpetually enjoining him from collecting the $352.43 increase of taxes caused by the fraudulent order of said board as aforesaid.

The defendants demurred to this petition, upon the grounds that the District Court had no jurisdiction over the matters and things set up

therein, and had no jurisdiction to change, modify, or in any manner revise the orders of the board of equalization in fixing valuations upon property for taxation. There were also a general demurrer and special exceptions, and a motion to dissolve the temporary injunction and dismiss the petition.

The judgment of the District Court shows that the motion to dissolve the injunction and dismiss the suit was sustained, the learned judge of that court evidently being of the opinion that the proceeding was an effort to revise the order of the board of equalization, and that his court was without jurisdiction to grant the relief prayed for.

Whether the county court would have jurisdiction to grant an injunction in a case like this, where the amount involved is over $200 and under $500, in counties where the civil jurisdiction has not been taken from the county court and placed in the district court, by an act of the Legislature, as had been done in this instance (see Session Acts 1891, p. 12), we do not now determine; but we are of opinion that the District Court of Carson County had jurisdiction of the case as presented, that the petition stated a good cause of action, and that the motion to dissolve the injunction and dismiss the suit should have been overruled.

Our Constitution provides, that "taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." Art. 8, sec. 1.

We are of opinion that, where the board of equalization, in raising or fixing the value of property, acts from corrupt or fraudulent motives, and in violation of the laws of the State, whether constitutional or statutory, their acts are voidable at the suit of the party aggrieved, and that the courts of the State having jurisdiction over the amount involved and the subject matter may, in a proper case, declare such acts to be void, and enjoin the enforcement thereof or compliance therewith, and that articles 5123 and 5124 of our Revised Statutes were not intended to debar or preclude any person from applying to the courts for relief in such cases—not, indeed, to revise the action of such board in fixing values, but to set it aside for fraud. The Legislature, in declaring their official acts in valuing property for taxation to be "final" and not subject to revision," had in contemplation their lawful acts, and not such as are prompted by corrupt, arbitrary, or fraudulent motives, and in violation of constitutional or statutory rights. The statute under which the board was organized limits its power to fix values on property at its "fair market value."

The Legislature has no power to create any board or commission and empower it to confiscate any person's property, either directly or indirectly. To arbitrarily value one person's property for taxation at largely more than it is worth, while another's, subject to the same rate of taxation, is placed at greatly less than its value, is a clear violation of our Constitution, because the tax in such a case is not equal and uniform, and the property of the county is not taxed in proportion to its value. It

is an arbitrary wrong done the former in his "lands and goods," and a fraud upon his rights, for which he has a remedy in the courts of the State guaranteed by section 13 of our Bill of Rights, which declares: "All courts shall be open, and every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law." Texas Constitution, art. 1, sec. 13.

By due course of law reference is here made not only to the valid statutory enactments of the Legislature, but to the general law of the land— "a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society." Cooley's Principles of Constitutional Law, pp. 231, 232.

Our statute (article 5120) seems to contemplate that the board of equalization shall constitute a kind of judicial tribunal. It is formed out of the commisisoners court, which is required to convene and sit as a board of equalization at a certain time and place. It shall have power to send for persons, books, and papers, swear and qualify persons to ascertain the value of property, and see that every person has rendered his property at a fair market value. And whenever they shall find it their duty to raise the assessment of any person's property, the county clerk shall give such person written notice that they desire to raise the value of the same.

These provisions clearly contemplate that the value to be fixed by the board, where a contest is made, shall be the result of their deliberate judgment, exercised in the light of the facts proven, as well as of matters within their own knowledge, the proceeding being judicial in its character. If, therefore, these boards can arbitrarily ignore the facts, the provisions of the statute requiring the party whose assessment is to be raised to have written notice thereof would be a mockery and a farce.

Nor has such board the right or power to willfully assess any person's property at more than its "fair market value," and to thus discriminate against any person or corporation. And wherever by any device such discrimination occurs, it is the constitutional right of persons so injured to have redress in the courts of the State, by injunction and decree annulling such action, on the ground of fraud. For all such arbitrary acts performed in the exercise of judicial power are fraudulent and voidable in the proper tribunals of the State, by direct proceedings to set them aside.

The Supreme Court of Illinois, in Railway v. Cole, 75 Illinois, 594, in passing upon a case where the valuation placed upon the property of the railway company by the board of equalization was arbitrary and excessive to an unreasonable extent, say: "Because the law has devolved on the board of equalization, and not on the courts, the duty of making such valuations, we hold it is not the duty of the courts to exercise any supervisory care over its valuations, so long as it acts within the scope of the powers with which it is invested, and in obedience to what may reason-

ably be presumed to be an honest judgment, however much we may disagree with it. But whenever the board undertakes to go beyond its jurisdiction, or to fix valuations through prejudice or a reckless disregard of duty, in opposition to what must necessarily be the judgment of all persons of reflection, it is the duty of the courts to interfere and protect taxpayers against the consequence of its acts. Where its jurisdiction is conceded, no mere difference of opinion as to the reasonableness of its valuations will justify equitable interference; but its valuation must be the result of honest judgment, and not of mere will." This case, upon the facts, seems to be very much in point here.

In Hotel Company v. Lieb, the same court said: "Where, however, the valuation is so grossly out of the way as to show that the assessor could not have been honest in his valuation—must reasonably have known that it was excessive—it is accepted as evidence of a fraud upon his part against the taxpayer, and the court will interpose." 83 Ill., 609. See also Cooley on Tax., 2 ed., p. 784; 25 Am. and Eng. Encyc. of Law, 1 ed., pp. 261, 262, and authorities there cited; Tainter v. Lucas Co., 29 Wis., 375; 2 Desty on Tax., pp. 681, 656, 1433.

If, however, the board errs in honest judgment, under our statute there is no appeal from its decision. Its conclusion is final, and not subject to revision by any court. This suit was not brought to revise the action of the board, but to set it aside for fraud, and was the proper suit to file, where the facts alleged existed.

We are therefore of the opinion that the District Court erred in dissolving the injunction and dismissing the plaintiff's petition, and order that the judgment herein be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Writ of error refused.