## CHICAGO, R. I. & G. RY. CO. v. STATE et al. (No. 2537.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 20, 1922. Rehearing Denied April 27, 1922.)

I. Taxation ⬥⟳406—Taxes reassessed without authority not legal charge against property.

Where proceedings to reassess property were contrary to the statute, the taxes were not a legal charge either against the property of, or a personal liability against, the owner.

2. Taxation ⬥⟳406—Questions of valuation being properly referred to county board of equalization, board's valuation is final, and prevents reassessment.

By Rev. St. art. 7524, railway companies are required to deliver to the tax assessor a sworn statement of all real estate owned, with valuation affixed, which, by article 7564, the assessor submits to the county board of equalization for review under articles 7564–7570, and after the board has reviewed and acted upon the valuation, the tax assessor makes up general tax rolls in accordance therewith, after which the board of equalization is required to approve, if found correct, and when a question of valuation for taxation has been once regularly referred to the proper county board, the valuation of that tribunal is final, and after that no authority exists in the board to subsequently reassess the same property to reach undervaluation of it made by such board for and during previous years.

3. Mandamus ⬥⟳10 — Cannot compel performance of illegal act.

A court cannot compel performance of a duty on the part of an equalization board that was unauthorized and illegal.

4. Mandamus ⬥⟳1—Writ defined.

A writ of mandamus is a summary writ issuing from the proper court, commanding the official board to whom it is addressed to perform some specific legal duty to which the party applying for the writ is entitled of legal right to have performed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mandamus.]

**5. Taxation ☞493(4)—Final action of county board of equalization not reviewable.**

The action of a county board of equalization in fixing the value and assessing property is final, and not reviewable by courts, even for gross undervaluation.

**6. Constitutional law ☞284(1)—Taxation ☞ 452—Undervaluation of property for taxes not within "due process of law" clause.**

Undervaluation of property by a duly constituted tribunal does not so legally threaten the rights of the state or public, within the meaning of due process of law, as to authorize a resort to courts for reassessment, and, in absence of statute, the state is without remedy against a gross undervaluation of property by the equalizing board of a county.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

Appeal from District Court, Tarrant County; R. E. L. Ray, Judge.

Action by the State of Texas and another against the Chicago, Rock Island & Gulf Railway Company. From judgment for plaintiffs, defendant appeals. Reversed and rendered.

The state of Texas and the Fort Worth improvement district No. 1, it appears, as plaintiffs brought the suit on June 11, 1919, against the appellant to recover taxes alleged to be due, delinquent and unpaid for the years 1911 to 1915 on 2.3 miles of railroad within the limits of Fort Worth improvement district No. 1. The appellant denied that any taxes were due, and specially pleaded that in and during each of the years 1911, 1912, 1913, and 1914 the board of equalization of Tarrant county in regular session and in the manner provided by law, reviewed, equalized, valued, and assessed the property described in the plaintiffs' petition at the valuation of $28,950 for the years 1911 to 1913, inclusive, and at $29,200 for 1914, duly approved, certified, and returned the tax rolls or tax records, showing that the property was duly valued and assessed at such valuation; and the legal amount of all taxes based on such assessments so made and certified was paid to the tax collector of Tarrant county by the appellant. It was further alleged that at a time long after the property was so assessed and taxes paid the tax assessor and the county commissioners as a board of equalization sought to reassess the property in question for the same years, and to fix the value for each of said years at a different and greater value, which action, it is claimed, was void. The appellee by supplemental petition replied to the answer. The case was submitted to the court upon an agreed statement of facts, and in accordance with his conclusion judgment was entered in favor of appellees for the amount of the taxes, including penalties and interest, sued for.

As material to state here, the Fort Worth improvement district No. 1 of Tarrant county was duly created and organized in 1909 under the laws of Texas. The appellant's property, against which the taxes sought to be recovered are assessed, is situated within the limits of this improvement district, and consists of 1.53 miles of main line and 0.50 mile of the Dallas branch line, which includes track, switches, roadbed and ground, and certain buildings on it. The improvement district has outstanding bonds with a tax levy of $1.75 on the $100 valuation of taxable property in the district. During each of the years 1911, 1912, 1913, and 1914 the appellant's property situated in the said improvement district was duly rendered by appellant and assessed by the tax assessor of Tarrant county, and in each of these years the commissioners' court of Tarrant county in the regular terms for the transaction of business levied a tax of $1.75 on each $100 valuation of taxable property in said district for district purposes, reviewed and passed on appellant's said rendition and assessments, and equalized, valued, fixed, and assessed the valuations on said property at the amount of $28,950 for each of the years 1911, 1912, and 1913, and at the valuation of $29,200 for the year 1914; and said property was each of these years assessed at such valuations, and the tax rolls were duly approved, certified, and returned for each of the said years at the valuations and assessments mentioned. The amount of taxes on the valuations and at the tax rate so made was promptly paid each year by the appellant and accepted by the tax collector of Tarrant county, being $506.63 for each of the years 1911 to 1913, inclusive, and $511 for the year 1914. Said renditions and assessments were made and the taxes paid thereon on the ratio of the value the railroad mileage in the said improvement district bore to the value of its entire mileage in Tarrant county. Considering the appellant's mileage in said improvement district by itself and separately, it appears more valuable than the mileage in other parts of Tarrant county, by reason of the fact that there were 57 acres of land owned by appellant on which were located railway yards, roundhouses, numerous switches and sidings, buildings, improvements, and terminal facilities.

It appears that in each of the years 1911 to 1914 the Fort Worth improvement district No. 1, acting through its board of commissioners, appeared before the county commissioners' court and board of equalization, and made complaint to said court and board that the assessments made by and against appellant's property were inadequate and greatly less than the true and full value of the property, and less than the proportionate

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

value at which other property in the district was valued and assessed, and sought to have the commissioners' court and board of equalization correct and make proper assessments. The commissioners' court and board of equalization, acting on the complaint, refused each time to correct, alter, and raise the valuation and assessments so made. It appears that on November 7, 1914, the Fort Worth improvement district No. 1 instituted suit in the district court against the county commissioners' court, the board of equalization and the members thereof, and the tax assessor of Tarrant county, seeking to set aside and declare invalid the valuation and assessments made and approved by the commissioners' court as a board of equalization of appellant's railway within the improvement district made for the years 1911 to 1914, inclusive, and to compel, by writ of mandamus, the said officers to proceed to assess and value all of appellant's property within the improvement district at another and different proportionate value. The appellant was not made a party to the suit. The petition in that suit alleged that the assessments for the several years were incorrect and invalid; that they were unreasonably and unconscionably less than the true and full value of said property, and that the assessments were arbitrarily and knowingly made at about one-sixth of the true value of the property within the improvement district; and that the assessments were fraudulently made. Upon a hearing of that cause the district court entered the following decree (omitting formal parts):

"It appearing to the court that in making the assessment of the property described in plaintiffs' first amended original petition for the years 1911, 1912, 1913, and 1914, the entire main track mileage of said railway company within the county of Tarrant, including that outside the levee district, was considered, and a valuation of so much per mile of the main track within the levee district was arrived at by considering the entire main track mileage within the county as done for county purposes; and it further appearing that such action was arbitrary, and resulted in a valuation far less than the true and full value of the property, and in an assessment for less than the proportionate value at which the other property within said district was assessed; and it further appearing that such arbitrary action and assessment constitute a fraud upon plaintiff's right and deprive it of taxes which it is entitled to collect—it is considered by the court that as to the taxes which it is entitled to collect for the years 1911, 1912, 1913, and 1914 the said plaintiff is entitled to the relief prayed for, and that the assessments for said taxes are invalid, and should be set aside.

"It is therefore ordered, adjudged, and decreed by the court that the assessments made upon the property of the Chicago, Rock Island & Gulf Railway Company, within Fort Worth improvement district No. 1, for levee purposes, for the years 1911, 1912, 1913, and 1914, are

241 S.W.—17

hereby declared to be invalid, of no force and effect and are hereby set aside.

"It is further adjudged and decreed by the court that a writ of mandamus issue against the defendants herein, in accordance with law, as prayed for in plaintiff's first amended original petition, directing the said defendants, the board of equalization, Jesse M. Brown, county judge of Tarrant county, R. E. Duringer, H. R. Wall, Olin Gibbins, and R. Snow, composing the board of equalization, and the assessor of taxes of said Tarrant county, Tex., to proceed to assess at the same proportion of its real and true value as the assessments of other property within said district have been made, for the years 1911, 1912, 1913, and 1914, for levee purposes, all the property of the Chicago, Rock Island & Gulf Railway Company located within Fort Worth improvement district No. 1, in Tarrant county, and described in plaintiff's first amended original petition, and further directing each of said defendants to perform his respective duties imposed by law in making said assessments."

The defendants in that particular suit filed a motion for a new trial, but the same was overruled, and no further step was taken to appeal. Thereafter a writ of mandamus was duly issued and served on the said defendants, and thereupon, on August 8, 1916, the county commissioners' court at a regular meeting canceled the prior assessments on said property of appellant, ordered a list of the property to be made as required by law, and referred such list to the tax assessor of Tarrant county to be reassessed. The tax assessor, after reassessing the said property for the years 1911, 1912, 1913, and 1914 at the value of $80,000 for each year, submitted such reassessments to the commissioners' court; and it, acting as a board of equalization, after notice to the appellant and after the appellant by its attorney had appeared and was heard, passed on the assessments and valuations, and fixed and assessed the property at the sum of $80,000 for each of said years, and computed the taxes upon the basis of the tax rate for each of said years. The tax lists were then made up, approved, certified, and returned and delivered to the tax collector of Tarrant county. The taxes on this reassessment are the taxes sued for in the instant suit now on appeal.

Lassiter & Harrison, of Fort Worth, for appellant.

Ike A. Wynn, of Fort Worth, for appellees.

LEVY, J. (after stating the facts as above). [1] The question for decision is an agreed one. "It is agreed," quoting, for the decision by the trial court and the appellate court, "that the sole question in this case for the determination of the court is whether the reassessment by the tax assessor and

the county commissioners' court as a board of equalization is legal and binding upon the defendant under the facts hereinbefore stated." The proceedings here reassessing the property of appellant were not in accordance with, nor authorized, either expressly or impliedly, by any special statutory provision, but were contrary to the statute; and the taxes sued for therefore are not, it is concluded, a legal charge either against the property of or as a personal liability against the appellant. No question can be or is made as to the necessity of a legal assessment before any liability for the taxes can attach.

[2] As provided by the statute of this state, the tax assessor of the county assesses property, and on this data furnished them the county commissioners' court acts as a county board of equalization, or as reviewing officers. As applied to assessment by railroads, it is required of every railroad corporation that it deliver to the tax assessor of each county a sworn statement in the form of a classified list of all real estate owned by it in the county, with a valuation affixed to the same. Article 7524, R. S. The assessor submits this statement or list to the board of equalization of the county for review and action thereon. The power and authority conferred upon the county board of equalization as to all property subject to assessment for taxes are, as specified by the statute, those of "inspection, correction, equalization and approval of the tax rolls." Article 7564, R. S. The statute particularly provides that such board of equalization has the authority (1) "to correct errors in assessments"; (a) "to assess property which has not been assessed or rendered for taxation"; (3) "to place on a supplemental roll unlisted property"; and (4) "to make equalization of assessments, and to lower or raise the value of the property, either without complaint or upon petition of the property owner respecting valuation." Articles 7564-7570, R. S. The county board of equalization is further clothed with the authority, and it is made their duty, in reviewing and acting on the value to be placed on property for taxation, to hear evidence as to the value thereof. Such board had the authority "to call before it such persons as in its judgment may know the market value or true value of such property, as the case may be, by proper process, who shall testify under oath as to the character, quality and quantity of such property, as well as the value thereof."

Further, the statute provides:

"Said court, after hearing the evidence, shall fix the value of such property in accordance with the evidence so introduced and as provided for in article 7569 of this chapter; and their action in such case or cases shall be final." Article 7570, R. S.

The reference "as provided in article 7569 of this chapter" as stated in that article reads:

"It is provided that such officer [tax assessor] or court shall take into consideration what said property could have been sold for at any time within six months next before the rendition of said property."

After the county board of equalization has finally reviewed and acted upon the valuation of property it is the duty of the tax assessor to make up general tax rolls in accordance therewith, after which the board of equalization is required to "approve the same if same be found correct." There are no other statutory provisions extending authority or conferring authority upon the county board of equalization to review and act upon the valuation of property for taxation, except as above referred to. In view of the statutory provisions above referred to, it seems that the Legislature, under constitutional authority to do so, has intended to provide a complete and conclusive system of review and equalization of assessments of property for taxation, with reference to value, through official boards for that purpose. Consequently the county board of equalization, which is constituted the exclusive board of review and equalization, can exercise only such power with reference to reviewing and fixing the value of property for tax purposes as is conferred upon it by statute. By express terms of the statute, when a question of valuation for taxation has been once regularly referred to the proper county board of equalization, the valuation of that tribunal is "final." After the tax rolls are made up in accordance with the "final" review and action of that tribunal and are certified by such board, their jurisdiction over that property for assessment purposes for that year is legally ended. Railway Co. v. Smith County, 54 Tex. 1; Railway Co. v. Harrison County, 54 Tex. 119; State v. Couts' Estate (Tex. Civ. App.) 149 S. W. 281. As the decision of the county board of equalization is "final" on the question of valuation, and their jurisdiction ends after the tax rolls for that year are finally certified as provided by the statute, then no authority or jurisdiction in such board would exist to subsequently make reassessment on the same property to reach undervaluation of it made by such board for and during previous years, as here shown. In this construction of the statute, that the county board of equalization had no power or authority to make the reassessments in this case, it is immaterial that the reassessment was made in pursuance of the mandamus compelling it to be done.

[3-5] The judgment of the district court was void as undertaking to compel performance of a duty on the part of the equalization board that was unauthorized and illegal for it to do in the case. The writ of

mandamus is a summary writ, issuing from the proper court, commanding the official or board to whom it is addressed to perform some specific legal duty to which the party applying for the writ is entitled of legal right to have performed. The writ issues only when the official or the board to whom it is directed is in legal default; it cannot confer upon such person or board an authority to do an act which could not voluntarily have been legally done; but it is a mandate to compel the exercise of an authority which the official or board already legally possessed, but which such official or board has wrongfully refused or neglected to perform. The district court was without jurisdiction over the subject-matter, because the action of the county board of equalization in fixing the value and assessing the property in the first instance was "final" and not reviewable by the courts, even for gross undervaluation. When, as here, no appeal is provided from the decision of the legally constituted board of equalization on questions of fact properly before it, the inference is that the Legislature intended that its decision should be, as worded, "final." Neither could it be said that the common-law right of resort to the courts would obtain, for the common law does not give a universal·right of appeal to courts from inferior tribunals for the mere purpose of granting a new trial of issues of fact. The value of property is entirely a question of fact. Whether the particular property has been valued too low or too high is dependent upon the testimony offered.

[6] . Appellees' proposition and argument, though, is that, the assessment and undervaluation being attacked on the ground "of fraud and invalidity," the district court properly entertained jurisdiction upon such allegations, and, finding them to be true, properly set aside the original assessment, and properly directed reassessment of the property. The alleged "fraud" consisted in the equalization board's grossly undervaluing the property for assessment. The answer to the contention necessarily is that there is no statutory provision giving to the state or the public a remedy in the trial courts where individual or corporation property has been grossly undervalued and assessed by the owner, assessor, or county board of equalization. In order for the public to question and have courts review individual assessments or actions of official boards in respect· thereto, there must be some statutory provision authorizing it. The case of Johnson v. Holland, 17 Tex. Civ. App. 210, 43 S. W. 71, cited by appellees, seems to authorize resort by the taxpayer himself to the courts for relief against an assessment "unreasonably excessive and arbitrarily and fraudulently made." The right of the public to have undervalued property raised or reassessed is quite different from

whatever right an individual has to resort to the courts to correct an assessment against his property that exceeds the legal or constitutional limit. The remedy of the individual in such case to abate an illegal tax is easily found in legal provisions. The interference, though, of the judiciary in such case on the part of the taxpayer himself does not proceed on the idea of any authority in the judiciary over the subject of assessment of property, but interposes on the application of a party whose legal rights are threatened by an unlawful exercise of authority. But undervaluation of property by a duly constituted tribunal does not so legally threaten the rights of the state or the public, within the meaning of "due process of law," as to authorize a resort to the courts for a reassessment. Hence in the absence of a special statutory provision, the state or the public is without a remedy against even a gross undervaluation of property by the equalizing board of the county. In the case of State v. Weyerhauser et al., 72 Minn. 519, 75 N. W. 718; Weyerhaueser v. Minnesota, 176 U. S. 550, 20 Sup. Ct. 485, 44 L. Ed. 583, the state sought to· compel revaluation by the county board of equalization of undervalued property for taxation. But in that case the state had the right to the remedy in virtue of an express provision of statute specially authorizing a reassessment of grossly undervalued property so as to make the property bear the same burden it would have borne if the true assessment had been made in the first instance. See, also, State v. Taylor, 119 Tenn. 229, 104 S. W. 242, and many other reported cases, in each of which there was express statutory provision for reassessment. If the statute of this state had not made "final" the original review and valuation of the property by the board of equalization, and had gone further and authorized, as in these other states, a subsequent reassessment of grossly undervalued property, then it is not doubted that a legal remedy would have existed to compel the board of equalization to perform its legal duty. In the application for mandamus here neither the state nor the Fort Worth improvement district had such legal remedy. The commissioners of said improvement district in· that application, as in this suit, are in the position and attitude merely of members of the public in that locality. The commissioners are not charged with the duty, nor authorized by law to assess or collect the taxes in suit. The appellant, owning property in the improvement district subject to taxation, does not stand in the relation of debtor to the commissioners, nor do the commissioners stand in the relation of creditors to the appellant. Therefore the commissioners, as such had no peculiar and distinct right to the proceedings, special to them and legally different from the state or county. The

injunction proceedings shown in the facts undertaken by appellant have no legal effect or bearing upon this appeal.

It is concluded that the judgment should be reversed, and that judgment should here be rendered in favor of the appellant, with all costs.

⬬For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes