**POWER v. ANDREWS et al. (No. 10306.)**

(Court of Civil Appeals of Texas. Fort Worth. June 2, 1923.)

**1. Schools and school districts ⬧➡107—Evidence held to show board of equalization arbitrarily fixed valuation of property for school tax purposes.**

In a suit to enjoin the trustees of a school district from collecting certain taxes, evidence *held* sufficient to show that the board of equalization, in assessing a lot for school purposes, were not guided by the market value thereof, but arbitrarily tripled the valuation thereof for state and county purposes.

**2. Schools and school districts ⬧➡103(1)—Arbitrary assessment of property for school tax purposes without reference to market value unconstitutional, irrespective of fraud and uniformity.**

An arbitrary assessment of property for school tax purposes at three times the valuation thereof for state and county purposes, without reference to the fair market value, violates Const. art. 8, § 1, however free from fraud, even though the excessive valuation is uniform.

**3. Schools and school' districts ⬧➡107—Judgment upholding higher valuation for school tax reversed if supported only by evidence of practice.**

A judgment sustaining a valuation of property for school purposes will not be disturbed, if supported by some testimony; but where there is no evidence to support a higher valuation, except that it was fixed pursuant to a practice to triple the valuation for state and county purposes, the judgment will be reversed as unsupported by the facts and law.

**4. Schools and school districts ⬧➡107—Suit to enjoin collection of school taxes based on excessive valuation not collateral attack on board of equalization's action.**

A taxpayer's suit to enjoin collection of school taxes based on an excessive valuation is not a collateral, but a direct, attack on the board of equalization's action.

Appeal from District Court, Archer County; H. R. Wilson, Judge.

Suit by F. M. Power against W. L. Andrews and others, as trustees of the Archer City Independent School District No. 1. From a decree denying a temporary injunction, plaintiff appeals. Reversed and remanded, with instructions.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellant.

W. E. Forgy, of Archer City, and Weldon & McDonald, of Wichita Falls, for appellees.

BUCK, J. F. M. Power filed suit for injunction against W. L. Andrews and six others, as trustees of the Archer City independent school district No. 1, alleging that petitioner was a taxpayer and citizen of Archer City, Archer county, Tex., and that on the 1st day of January, 1921, plaintiff was the owner of lot 1, in block 2, of the town of Archer City, and that he was the owner of one automobile of the value of $500, and money and cash on deposit in the sum of $6,500, and jewelry of the value of $500. That he also owned at said time $10,000 worth of United States Liberty bonds of various issues, which were exempt from state, county, and school taxation. That on August 31, 1921, the plaintiff rendered to the tax assessor of Archer City independent school district No. 1, to wit, L. P. Carrington, his personal property and real estate in said independent school district for taxation, rendering lot 1 at a valuation of $2,000, and the other property at the respective valuations set out above. That said rendition of said property was a fair valuation for said property and was equal in value of property of like character of other citizens of said independent school district. That thereafter the board of equalization of said independent school district fraudulently and arbitrarily raised his rendition on the real estate and on his personal property aforesaid from $9,500, as rendered by plaintiff, to $19,100. He alleged that said last-mentioned valuation was arbitrary, confiscatory, and fraudulent, and in excess of the valuation placed upon the property of other citizens of like character and similarly situated in said school district. He further alleged that said board of equalization had arbitrarily assessed his United States government Liberty bonds at the sum of $10,000, which bonds

were exempt by law from taxation, and the said assessment was fraudulent, arbitrary, excessive, and confiscatory, and in violation of the United States laws exempting such bonds from taxation. That the said school district, through its trustees and through its collector, L. P. Carrington, was seeking to collect taxes alleged to be due said independent school district upon said fraudulent assessment, as raised and made by said board of equalization, and that they were at that time seeking to collect taxes in the sum of 50 cents on the $100 valuation upon such excessive valuation and assessment, to plaintiff's damage in the sum of $135. That said unlawful and arbitrary assessment created a fictitious lien upon the plaintiff's property and thereby cast a cloud on his title to the same, and that said Archer City independent school district No. 1, through its tax collector, would, unless restrained, seize and sell the plaintiff's personal property for the payment of said unlawful assessment. Wherefore he prayed for a temporary writ of injunction against the defendants to restrain them from the collection of said taxes.

The defendants answered by way of general demurrer, a general denial, and specially pleaded that the property of plaintiff was not arbitrarily and fraudulently assessed in excess of the valuations placed upon property of like kind and location of other citizens of the said independent school district, but alleged that in fact and in truth plaintiff's property was by him listed and valued entirely below its real value and the value placed upon like kind of property in said district, and that the value placed upon plaintiff's property by the board of equalization of said district was a fair value and on the same basis and values of the assessment of property of like kind and location belonging to other citizens of said school district, and specially denied that any government bonds were listed by plaintiff or that the same were listed and assessed by the defendant.

Upon a hearing on April 14, 1922, the court denied the relief prayed for by plaintiff, and he has appealed to this court.

Luther Carrington, witness for plaintiff, testified that he was the assessor and collector for the Archer City schools and the city corporation; that the board of equalization, acting for the city, raised the assessment on plaintiff's lot from $2,000 to $6,000, placing the valuation of the lot for tax purposes on behalf of the city at $4,400, and placing a valuation of $1,600 on the fixtures. The same board of equalization, acting for the school district, placed the valuation of the lot at $10,000 and the fixtures at $1,600. He further testified:

"The reason that the same board, acting for the city, placed a valuation of $6,000 on this property, and then the same board, acting for the school district, placed a valuation of $11,600 on it, nearly twice as much, was that in our school district assessments our values were supposed to be thribbled on the state and county. This was the first time this building had been rendered. The state and county taxes put one basis of value on that property. I did not render that property for the state and county. You are supposed to give a full rendition to the state and county. The city does not double that rendition all the time. I did not say that the city doubled the state and county renditions. The city takes a value of their own, anything that the board thinks its value should be. We try to, in taking renditions to the city, place on the property what we think its fair value ought to be, and try to tax all property similarly situated in the same manner and at the same valuation.

"Q. What I am getting at is this: Why was it that double the value was placed on it by the same board acting for the independent school district as was placed on it for the city? A. Well, every one else in the school district was about three times the state and county values. Ordinarily they put the value three times as much as it was for the state and county. There might have been a few exceptions where that wasn't done. That was the general requirement in the rate of the independent school district. The object of that was to get more taxes. In taking this value of three times as much as it was assessed for the state and county, the object of the independent school district was to collect more taxes, to get more money to run the schools. We had that kind of rule that we would collect on the basis of three times the value for school taxes that they rendered it for the state and county taxes, but I don't know that it was an arbitrary rule.

"I don't think the city doubled the values as assessed by the state and county all the way through. As I tell you, this was the first time this building had been assessed for taxes. * * * I presume that the people in the country rendered their property for state and county purposes at about 50 or 60 per cent. of its value. Ordinarily that is the way they rendered property."

The plaintiff, the only other witness, testified that one of the members of the board told him that they were taking state and county renditions as the basis for values for city purposes, and doubling it for city tax values, and thribbling the valuation for school purposes; that such basis of valuation for city and school purposes have reference only to real estate; that he appeared before the board and asked them to do that in his case and told them it would be agreeable to him to place the valuation for city purposes on his building at $4,000 and for school purposes at $6,000; that they refused to accede to his request; that in his judgment the building on the lot could be replaced for $4,000; that there was not much demand for such property in Archer City; that he paid $500 nearly three years before for the fixtures and could not sell them for that much at the time of the trial.

[1, 2] Much testimony as to the comparative valuations and values of different pieces of property in Archer City, and especially Archer City's bank buildings (plaintiff's building being used for banking purposes), was given; but we think the testimony, as a whole, bears out the contention of plaintiff that the board of equalization in assessing the lot for taxes for school purposes were not guided by the market value of the property, but followed an arbitrary plan of assessment, and for school purposes tripled the valuation placed on said property for state and county purposes. We believe in doing this they were going beyond and outside of their legal and official duty. The state Constitution, art. 8, § 1, provides:

"Taxation shall be equal and uniform. All property in this state, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

However free from fraud, we do not believe that the purpose of the board of equalization to assess the real estate of the taxpayers in the district at three times the valuation given for county and state purposes without any reference to the fair market value of the property can be sustained. This is true, even though the excessive valuation be uniform. In Johnson v. Holland, 17 Tex. Civ. App. 210, 43 S. W. 71, writ denied, this court, speaking through Justice Hunter, says:

"Our statute [then article 5120, now article 7164, Rev. Statutes] seems to contemplate that the board of equalization shall constitute a kind of judicial tribunal. It is formed out of the commissioners' court, which is required to convene and sit as a board of equalization at a certain time and place. It shall have power to send for persons, books and papers, swear and qualify persons to ascertain the value of property, and see that every person has rendered his property at a fair market value; and, whenever they shall find it their duty to raise the assessment of any person's property, the county clerk shall give such person written notice that they desire to raise the value of the same. These provisions clearly contemplate that the value to be fixed by the board, where a contest is made, shall be the result of their deliberate judgment, exercised in the light of the facts proven, as well as of matters within their own knowledge; the proceeding being judicial in its character. If, therefore, these boards can arbitrarily ignore the facts, the provisions of the statute requiring the party whose assessment is to be raised to have written notice thereof would be a mockery and a farce. Nor has such board the right or power to willfully assess any person's property at more than its 'fair market value' and to thus discriminate against any person or corporation."

In this opinion are cited several decisions of other jurisdictions supporting the conclusions. In Hotel Co. v. Lieb, 83 Ill. 609, the court said:

"Where, however, the valuation is so grossly out of the way as to show that the assessor could not have been honest in his valuation—must reasonably have known that it was excessive—it is accepted as evidence of a fraud upon his part against the taxpayer, and the court will interpose."

See Mann v. State, by this court, 18 Tex. Civ. App. 701, 46 S. W. 652, and City of Sweetwater v. Baird Development Co., 203 S. W. 801. This last-cited case, by the El Paso Court of Civil Appeals, is much in point. Justice Higgins, speaking for the court, said:

"It was further averred that the board of equalization equalized and assessed all property in Sweetwater on the basis of or less than its cash market value, where it had a market value, and where it had no such value, then it was assessed at or less than its reasonable intrinsic value; that the action of the board of equalization in fixing and placing the value of the plaintiff's property far in excess of its reasonable, fair, and intrinsic value was an illegal and arbitrary discrimination against plaintiff, and a legal fraud upon it, and was not in fact an equalization of plaintiff's property with other property in the city, but was an intentional and arbitrary assessment of plaintiff's property at a value of about two-fifths above the proportionate value fixed on other property in the city, in violation of article 8, § 1, and article 1, § 19, of the Constitution of Texas and section 1 of the Fourteenth Amendment to the federal Constitution. * * * The refusal of a peremptory instruction in defendant's favor is assigned as error. The right to an injunction to restrain the collection of a tax illegal by virtue of an arbitrary discrimination against the taxpayer in property valuations is well settled. The question has been often before the courts of this state, and it will serve no purpose to review the authorities. The right has been recognized and enforced in the following cases: Lively v. Railway Co., 102 Tex. 545, 120 S. W. 852; Brown v. Bank. 175 S. W. 1122; Johnson v. Holland, 17 Tex. Civ. App. 210, 43 S. W. 71; Linz v. City of Sherman, 62 S. W. 71."

In Brown v. Bank (Tex. Civ. App.) 175 S. W. 1122, it is said:

"The allegations of the petition showing the nature and object of the suit are fully set out in a former part of this opinion, and, as said by counsel for appellees, the alleged illegal acts of the appellants and wrong thereby inflicted were charged to be the result of denying to appellees the equality of taxation secured by the Constitution of the state of Texas, which equality thereby required necessarily depended upon uniformity of assessment. Lively v. Railway Co., 102 Tex. 545, 120 S. W. 852. The allegations of their petition show the amount of taxes which would have been due by appellees, had their property been assessed on the

same basis as other property in Navarro county, and that they had tendered their amount to the tax collector of said county, and that the same had been refused. * * * Under the allegations of the petition, appellees were entitled to invoke the equitable relief sought, and the special exception in question was properly overruled."

In 26 R. C. L. § 217, p. 244, it is said:

"As value is the only measure which can be applied indiscriminately to all the different classes of property, real and personal, to achieve uniformity and equality the valuation of property is indispensable, and property can be taxed only in accordance with its value."

[3] As before stated, the plaintiff testified that the building could be replaced for $4,000, and Carrington testified that he thought the building could be sold for that money. There is no other testimony as to the value of the building and the lot. Hence, in so far as the evidence shows, the board of equalization had placed a valuation on the building considerably in excess of the reasonable market value. The same is true of the fixtures in the building. We are of the opinion that in no event would the plaintiff be liable for taxes on a valuation in excess of the reasonable market value of his property. Porter v. Langley (Tex. Civ. App.) 155 S. W. 1042; Constitution, art. 8, § 1; New York v. Barker, 179 U. S. 279, 21 Sup. Ct. 121, 45 L. Ed. 190. Of course, witnesses may differ as to what the reasonable market value of a piece of property is, and where there is some evidence that the valuation allowed by the trial court to stand is supported by testimony, an appellate court will not disturb the judgment on valuation. But where there is no evidence to support the higher valuation, except that it was placed on the property in pursuance of a practice to place the valuation for school purposes at three times its valuation for state and county purposes, we do not believe that such valuation has any support under the facts and law.

[4] It is said in appellant's brief that the trial court seemed to think that the action of the board of equalization was final, and that the suit was in effect a collateral attack upon the judgment of said board. This suit is not a collateral attack, but is a direct attack upon the action of the board. Brown v. Bank (Tex. Civ. App.) 175 S. W. 1122.

The judgment of the trial court is reversed, and the cause remanded, with instructions to hear evidence upon the question of the reasonable market value of the appellant's property, and to issue an injunction restraining the appellees from seeking to collect taxes on the property at a valuation in excess of such reasonable market value.

Reversed and remanded, with instructions.