## PORT ARTHUR INDEPENDENT SCHOOL DIST. et al. v. BAUMER et al.

### No. 2466.

Court of Civil Appeals of Texas. Beaumont.

Oct. 27, 1933.

Rehearing Denied Nov. 1, 1933.

B. T. McWhorter, Jr., and A. A. Gunter, both of Port Arthur, for appellants.

Fred A. White, of Port Arthur, for appellees.

COMBS, Justice.

This suit was filed in the Fifty-Eighth district court of Jefferson county by L. C. Baumer and twenty-three other property owners of Port Arthur Independent School District, seeking to enjoin the school district, its board of trustees, board of equalization, and its assessor and collector of taxes from fixing alleged excessive and discriminatory valuations on their properties and from assessing and collecting taxes for the year 1932 on such valuations. Before the tax rolls were approved, a temporary injunction was granted, as prayed for, pending final hearing, and upon a trial to the court upon the merits the temporary injunction was dissolved as to some of the complainants. As to the appellees, Baumer et al., the court rendered judgment perpetually enjoining the school district and its officers from levying, assessing, and collecting taxes on their property on the valuations theretofore fixed upon said properties by the board of equalization and enjoining them from assessing and fixing the valuations of the properties of the appellees in excess of certain amounts found by the court to be the reasonable values thereof. From that judgment, the school district and its officers have appealed. The complainants who were denied relief have not appealed.

The court filed findings of fact and conclusions of law. These findings are too long to be set out in this opinion but so far as material to this discussion the fact findings were, in substance:

(a) That the school district officials, in making the assessment of property in the Port Arthur Independent School District for the purpose of taxation for the year 1932, took the values of all properties in said district as assessed for the year 1931 and reduced same 10 per cent.; that said scheme was followed generally throughout the district without variation, and without regard to the actual cash market value of the land and without investigating, hearing, or considering any other facts or circumstances; and that the values so placed on appellees' properties were far in excess of the reasonable fair cash market value thereof at any time during the year 1932.

(b) That the outlying lands of the school district, including the lands of appellees, were zoned for the purpose of fixing values, every acre of land in each zone being fixed at the same value without considering any other fact or circumstance affecting its value and without regard to the fair cash market value thereof.

(c) That the board of equalization heard no evidence and made no personal inspection of the property; that the method pursued by the officials of the school district in arriving at the valuation of property in the district resulted in fixing valuations on appellees' properties which are "discriminatory, confiscatory, illegal, arbitrary and void, and in contravention of article 8, section 1 of the Constitution of the State of Texas"; and that said valuations are greater than those fixed on the great majority of other lands in the school district of like nature and location.

As to the matter of excessive valuations of appellees' properties, the court, in the findings and the judgment, fixed what he considered the valuations of their properties for taxation and enjoined the assessing of said properties at any higher valuations. The values fixed by the board of equalization and by the court respectively on the properties of appellees are as follows:

| Name | Value fixed by Board of Equalization | Value fixed by Court |
|---|---|---|
| L. C. Baumer | $ 9,810.00 | $ 5,400.00 |
| H. E. Brinkman | 41,670.00 | 25,002.00 |
| H. C. Dailey | 15,750.00 | 9,765.00 |
| John Fett | 7,425.00 | 1,417.00 |
| Phillip Fett | 5,450.00 | 3,311.00 |
| Fred Gaertner | 11,790.00 | 9,639.00 |
| T. W. Hughen | 13,500.00 | 10,800.00 |
| Bennie Schreeb | 7,650.00 | 5,355.00 |
| D. S. Smith | 10,908.00 | 7,506.00 |

Appellees made timely appearance before the board of equalization and protested the valuations so fixed.

Complainants' pleadings contain allegations forming a proper basis for these findings.

Considerable testimony was elicited upon the trial of the case, most of it from officials of the school district. The valuations fixed upon the properties of the various complainants by the board of equalization and the method of arriving at such valuations were gone into at considerable length. After carefully considering the entire record, we have reached the conclusion that when the evidence is given its proper legal effect, the trial court's findings to the effect that the board of equalization pursued an illegal scheme or practiced fraud or its equivalent, in arriving at the valuations on appellees' properties, are without support.

■ The evidence wholly fails to show that the tax assessor and the board of equalization simply took the valuations for the year 1931 and reduced them 10 per cent. Mr. Ira Avant, a member of the board of equalization, testified that while it was the purpose of the board to reduce valuations of property in the district generally 10 per cent., that such plan was not rigidly followed or applied in all cases. With reference to this matter the witness testified upon cross-examination:

"Q. You folks (the Board of Equalization) acted upon and heard the protest of various and sundry parties who were property owners there in reference to valuations of property? A. Yes sir.

"Q. Mr. Avant what reductions, if any, or decreases, if any, in valuations were made for the year 1932 as compared with 1931? A. Well some of them we raised and some of them we cut, but the general run of them were reduced 10%. * * *

"Q. Now in reference to those properties of these relators, I will ask you to state how you arrived at the valuations for 1932. A. Well we took of course, in consideration the location of this stuff with reference to the city; the closer land got the higher valuation and so on.

"Q. I will ask you if it isn't true Mr. Avant that in arriving at the valuations of these relators' property for the year 1932 you just reduced it 10%? A. Not necessarily Mr. White; in some cases we reduced it a little more than 10%. We took the cases individually. * * *

"Q. Wasn't the general plan, general scheme and agreement used among the board of equalization, that reductions would be made in 1932 of 10%? A. Well we tried to give a 10% reduction on everything that we could. Of course, we had to equalize this as we went along. We couldn't just take from one piece to another and cut all 10%."

Incidentally, this witness showed a thorough familiarity with land valuations throughout the Port Arthur Independent School District. He had been in the real estate business in the city of Port Arthur for some fifteen years. He expressed it as his opinion that a 10 per cent. shrinkage in land value during the year 1932 from the value of 1931 was about right.

With regard to the zoning proposition, it was shown that in arriving at the valuations the board of equalization, for convenience, grouped the lands of similar kinds, character, and location into a sort of zone or block, assessing the land in such zone at approximately the same price per acre. The improvements in each case were separately considered and valued according to their value. The evidence discloses that there was a large number of such so-called zones. In arriving at values, the distance of the property from the main business section of the city was considered, and, generally, the land lying close in was valued higher than lands lying farther out, but this was not the sole controlling factor. In some instances lands which lay farther from the business section of the city were valued higher than other lands lying closer in, the witnesses explaining that proximity to paved streets, altitude of the land, drainage, the purpose to which such land was adapted, and its proximity to develop additions, were all considered in the fixing of the valuations. It would serve no good purpose to detail at length the testimony of the various witnesses on these questions.

It is sufficient to say that the testimony of Mr. Avant, as above summarized, is corroborated by L. B. Abbey. Mr. Abbey is tax assessor and collector of the Port Arthur Independent School District. He has served in that capacity since 1923, and his testimony shows him to be thoroughly familiar with properties and their values throughout the district. The testimony of these witnesses to the effect that no fixed scheme of determining values was followed by the board of equalization is in no way controverted.

The Port Arthur Independent School District was reorganized by special act of the Regular Session of the 30th Legislature. Chapter 86, page 717; Special Laws, 30th Legislature (1907), Gammel's Laws, volume 13. The act fully empowers the school district to levy, assess, and collect its taxes and to fix the valuations of property by a board of equalization. All general laws of the state are made available to it in the assessing and collecting of taxes.

■ It is true, as contended by appellees, that our Supreme Court has held that the adoption by a board of equalization of a fundamentally wrong principle or method of arriving at valuations, the application of which substantially injures the complainant, is ground for attacking its judgment. Drusedow v. Baker (Tex. Com. App.) 229 S. W. 493. Hence the use of any particular element of value, such as rentals produced, as the sole standard by which to fix the value of prop-

erty is fundamentally wrong. Rowland v. City of Tyler (Tex. Com. App.) 5 S.W.(2d) 756. As is also the zoning of a taxing district and the placing of all property in a particular zone at the same value per acre, without regard to the character of the land and the nature of the improvements thereon. Ogburn v. Ward County Irrigation District (Tex. Com. App.) 280 S. W. 169. But in the case before us the facts do not bring it within the rule announced in those cases. Here the facts show that no one particular element of value was considered to the exclusion of all others, or that any fixed scheme was followed, the application of which worked injury to the complainants.

■ Nor do we think the court's finding of excessive valuations, as set out above, authorized by the evidence. The testimony of Mr. Avant and Mr. Abbey tended strongly to show that the valuations fixed upon the properties of complainants were in each instance fair and reasonable and in line with the valuations fixed upon similar properties in the school district. Of the nine complainants whose properties the court found were over valued, only four, to wit, H. E. Brinkman, H. C. Dailey, Fred Gaertner, and D. S. Smith testified in the case. Of these, two, Mr. Brinkman and Mr. Gaertner, testified specifically that they were not familiar with the cash market values of land in the Port Arthur Independent School District. Nor did Mr. Smith or Mr. Dailey qualify as being familiar with the valuations of property in the Port Arthur Independent School District. At most, the testimony of the four complainants tends only to show that in their judgment their lands are over valued and have been assessed by the board of equalization at valuations out of proportion to similar property. Hence, at most, the evidence merely tends to raise an issue of fact as to whether or not the properties of these four complainants are over valued. As to the other complainants who were granted relief, we do not find any evidence even tending to raise the issue of the over valuation of their properties.

■ As a general rule, the decision of a board of equalization upon a particular assessment, in the absence of fraud or irregularity, is conclusive. Such valuation cannot be set aside merely upon a showing that the same is in fact excessive. Drusedow v. Baker, supra; Rowland v. City of Tyler, supra. It is the expressed intention of the law to make decisions of boards of equalization final

on the question of valuation. Article 1054, R. S. 1925; International & G. N. Ry. Co. v. Smith County, 54 Tex. 1; Johnson v. Holland, 17 Tex. Civ. App. 210, 43 S. W. 71. As pointed out in the latter case, the action of a board of equalization in fixing valuations involves fact findings, and its judgments are quasi judicial. The law having devolved upon such board, and not upon the courts, the duty of making valuations, it is not within the jurisdiction of the courts to exercise any supervisory care over its valuations so long as it acts within the scope of the powers conferred upon it by law and in obedience to what may reasonably be considered to be an honest judgment.

■ In determining the question of whether a board of equalization has been guilty of fraud, or something equivalent thereto, in fixing the valuation upon a complainant's property, a valuation which is clearly excessive may be considered as evidence of such fact. But before such excessive valuation may be considered by a court as evidence of fraud, it must be so grossly excessive as to authorize a court to conclude, as a matter of law, that such valuation could not have been the result of an honest judgment. Johnson v. Holland, supra; Early v. City of Waco (Tex. Civ. App.) 3 S.W.(2d) 131. It is not the province of a court to find, upon conflicting evidence, that a valuation is excessive and then consider such finding as evidence of fraud. Manifestly, in so doing, the court would be merely substituting its judgment of valuation for that of the board of equalization, and, in that manner, assuming to exercise a supervisory control over the valuation placed by such board.

We find nothing in the record to indicate that the taxing authorities of the Port Arthur Independent School District acted arbitrarily or with any improper motive, or that they followed any fixed scheme or method of valuing the appellees' properties. While there is some evidence upon which a court might find, were it an original proposition, that appellees' properties have, in some instances, been valued excessively, nevertheless there is no showing either of irregularity or fraud such as to warrant the court in setting aside the action of the board of equalization.

The judgment of the trial court is reversed and judgment here rendered for appellants, dissolving the injunction.