**TEKELL et al. v. CITY OF CLEBURNE.**

No. 2565.

Court of Civil Appeals of Texas. Waco.

Dec. 9, 1943.

Rehearing Denied Jan. 6, 1944.

R. A. Kilpatrick, of Cleburne, for appellants.

M. N. Bauldwin, J. N. Bauldwin, and Penn J. Jackson, all of Cleburne, for appellee.

HALE, Justice.

The City of Cleburne sued M. A. Tckell and others to recover delinquent taxes, interest and penalties in the sum of $518.10 for the years 1941 and 1942, and to foreclose a lien on the real property against which the taxes had been assessed. The City alleged that such taxes had been duly and legally levied and assessed against the property on the fair market value thereof for each year as determined by the honest judgment of its Board of Equalization. Defendants answered with a general denial and specifically alleged that the valuation placed on their property for each year was far above its market value and that the action of the Board of Equalization in so fixing such excessive valuations was arbitrary, discriminative, illegal, fraudulent and contrary to the provisions of the Constitution and Statutes of Texas. The case was tried before a jury. Upon the conclusion of the evidence the trial court peremptorily instructed the jury to return their verdict in favor of the City as prayed for in its petition. The court then rendered judgment in accordance with the verdict and defendants have appealed.

Appellants contend that the court below erred in refusing to submit the case to the jury. In passing upon such contention it is the duty of this court to consider the evidence in the most favorable light to appellants, and to indulge every reasonable intendment fairly deducible from the evidence in their favor. Simkins v. City of Corsicana, Tex.Civ.App., 86 S. W.2d 792, 793, points 1 and 2, and authorities cited.

The property in controversy consisted of two lots in the city of Cleburne upon which was situated a two-story brick building. One of the appellants testified that he and his brothers purchased the property in April, 1940, for the sum of $5,750; that they immediately rendered the same for taxes for the year 1940 at eighty per cent of its purchase price, or for the sum of $4,600; that they then made some improvements on the building at a cost of $1,000; that the Board of Equalization raised the value of their property to $10,000, whereupon he protested to the Board and to the Mayor, and that he then employed an attorney to represent appellants in the matter; that certain members of the governing body of the City thereafter induced him to dismiss the attorney on the promise that a proper adjustment would be made on the 1940 taxes; that the 1940 taxes were finally adjusted upon a valuation of $7,500, which he thought was too high but to which he agreed in order to dispose of the controversy; that he then rendered the property at a valuation of $6,500 for the year 1941 and the Board of Equalization raised the same to $10,000; that he appeared before the Board and sought to have the rendition reduced without avail.

C. H. Warren testified that he was engaged in the real estate business in Cleburne and had been so engaged since 1909; that he was familiar with the property in controversy and in his opinion the same was of the reasonable value of $5,-750 in April, 1940, and at all times subsequent thereto; that the improvements which were made on the property at a cost of $1,000 after it was purchased "wouldn't increase its value, and I doubt if the improvements were worth very much because it was peculiar to that particular

business." Other real estate men testified that the property had been listed with them at different times prior to its sale to appellants, and their opinions as to its market value on January 1, 1941 and 1942 varied from $6,000 to as much as $8,000. The property was assessed on a valuation of $10,000 as fixed by the Board and a rate of $2.31 for each $100 of value was levied for the years 1941 and 1942, making a total tax of $462 for the two years. While each member of the Board of Equalization testified in effect that in his opinion the property was of the value of $10,000 for each of the taxable years, the jury would have been authorized, under the evidence, to find that such valuations were more than fifty per cent in excess of the reasonable market value of the property.

Art. 8, Sec. 1 of the Constitution of Texas Vernon's Ann.St. provides that taxation shall be equal and uniform and that all property shall be taxed in proportion to its value, which shall be ascertained as may be provided by law. But, as said by this court in the case of Simkins v. City of Corsicana, supra: "It is well settled that the decisions of tax boards in matters of valuation are quasi-judicial in their nature, and therefore they are not subject to collateral attack, in the absence of fraud or other obvious violations of law. No mere discrepancy between the true value of the property and the amount at which it is assessed will warrant a court in setting aside a valuation fixed by the board where such valuation is the result of the honest judgment of the board in the application of lawful principles. On the other hand, if the board acts arbitrarily or capriciously or applies wrong principles in ascertaining the true value, then such valuations may be set aside by the courts. (Citing authorities)." See, also, State et al. v. Houser, 138 Tex. 28, 156 S.W.2d 968. Was there then any evidence in this case tending to show that the Board of Equalization acted arbitrarily, capriciously or applied wrong principles of law in ascertaining the true value of appellants' property? If not, the judgment of the trial court should be affirmed, but if so, then the judgment should be reversed.

There was evidence that the members of the Board of Equalization attempted in 1941 and 1942 to require all personal property to be rendered for taxation at eighty per cent of its value, and to require all real property to be rendered for taxation at one hundred per cent of its value; in arriving at the value of personal property the Board usually accepted the property owner's statement that he had rendered the same at eighty per cent of the value thereof as shown by a cost inventory accompanying the rendition; in arriving at the value of real property the Board did not accept the property owner's statement that he had rendered the same at one hundred per cent of the value thereof as shown by the cost of the property rendered; and in arriving at the value of real property the Board considered the value at which other real property was rendered and sought to equalize all such values on a level with the highest renditions which appeared to be satisfactory to the taxpayers. There was evidence tending to show that certain officials of the City became "irked" when appellants employed counsel to represent them in 1940 and when they sought to have the valuation of their property reduced in 1941.

In the case of Lively v. Missouri, K. & T. R. Co., 102 Tex. 545, 120 S.W. 852, 856, our Supreme Court held that under the provisions of Art. 8, sec. 1 of the Constitution it is the duty of officers charged with the assessment of property for taxation to determine its value by what it can be bought and sold for, and in the course of the opinion the court said: "The standard of uniformity prescribed by the Constitution being the value of the property, taxation cannot be in the same proportion to the value of the property, unless the value of all property is ascertained by the same standard. * * * The intention with which the acts were done is of no consequence."

Also, in the case of Johnson v. Holland, 17 Tex.Civ.App. 210, 43 S.W. 71, 72, error denied, it is said: "To arbitrarily value one person's property for taxation at largely more than it is worth, while another's subject to the same rate of taxation, is placed at greatly less than its value, is a clear violation of our constitution, because the tax in such a case is not equal and uniform, and the property of the county is not taxed in proportion to its value."

We think the evidence to which we have referred was sufficient to raise a fact issue for the jury as to whether the valuation which the Board of Equalization placed on appellants' property was ascertained by the same standard as the valuation which the

Board placed upon all other property in the City of Cleburne for each of the taxable years in controversy. If the jury had been permitted to make a finding on such issue, and if it had been permitted and required, under appropriate definitions and instructions, to find the reasonable market value of appellants' property on January 1, 1941 and 1942, respectively, and to find whether the Board of Equalization acted arbitrarily or capriciously in fixing the valuations at $10,000 for each of the taxable years, then the court could have determined as a matter of law from the facts so found whether the claimed taxes had been duly and legally levied and assessed as alleged by appellee, or whether the excessive valuations, if any, were illegally ascertained as alleged by appellants.

Because we are of the opinion that the trial court erred in peremptorily instructing the jury to return its verdict in favor of appellee, the judgment appealed from is reversed and the cause is remanded for another trial.