HIGHLAND PARK INDEPENDENT SCHOOL DIST. OF DALLAS COUNTY et al. v. REPUBLIC INS. CO.

No. 11791.

Court of Civil Appeals of Texas. Dallas.
Dec. 15, 1934.

On Rehearing Feb. 16, 1935.

On Second Motion for Rehearing March 15, 1935.

Bell & Clark and Vaughan, Purl & Lewis, all of Dallas, for appellants.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellee.

J. W. Gormley, of Dallas, amicus curiæ, on second motion for rehearing by appellee.

JONES, Chief Justice.

Appellee, Republic Insurance Company, incorporated under the laws of the state of Texas, with its principal office in the town of Highland Park, Dallas county, Tex., instituted this suit against appellants Highland Park Independent School District and its board of trustees, and on final trial obtained a perpetual injunction against appellants, restraining them from disregarding what it termed a final judgment of appellant's board of equalization, valuing appellee's personal property for tax purposes, and a mandamus to compel appellants to accept the amount of taxes due under said valuation. When the petition was presented, a temporary restraining order was issued, then, at a later hearing, a temporary injunction was granted, and upon a final trial of the case, the permanent relief prayed for was given. From this judgment, appellants have perfected this appeal. The term "appellant" will refer to the Highland Park Independent School District. The following are the necessary facts:

The Highland Park Independent School District is a regularly organized municipal district for school purposes, with a board of trustees and its own tax assessor and collector. The Republic Insurance Company was chartered under the laws of the state of Texas, and its business may be briefly described as that of writing fire and casualty insurance. Its domicile is within said school district and, under the laws of this state, all of its personal property subject to taxation is taxable for school purposes by said district.

On March 28, 1933, appellee prepared a rendition of what is claimed to be its taxable personal property, verified same by proper oath, and duly delivered same, through the medium of the United States mail, to C. H. Hickcox, appellant's tax assessor. This rendition was made on the blank form prescribed by the comptroller of the state for the listing, inventorying, and assessing of property, and attached thereto was what purported to be a complete itemized list of all its taxable personal property, and the values of the respective items. There was also listed what appellee claimed to be insurance reserves, and the amount of the value of the claimed reserves exceed the value of the taxable personal property by approximately $1,000. The rendition, therefore, showed that appellee had no personal property subject to taxation, under its method of calculating taxable assets.

When this assessment was received by the tax assessor, appellant was not satisfied

therewith, claiming that certain personal property was rendered too low; that certain other personal property owned by appellee was not rendered; and that certain items listed in appellee's rendition as reserves was not legally exempt from taxation. The claim was also made that appellee, on December 28, 1932, used $402,671.87 in the purchase of United States tax free bonds, not for the purpose of making a bona fide investment of said bonds, but for the fraudulent purpose of evading taxation on that amount of money, and that said bonds were converted into cash on January 31, 1933; that this action was in fraud of appellant's right of taxation; and that said sum of money should have been rendered as cash.

Appellant employed attorneys to contest appellee's claim that it owned no personal property subject to taxation. These attorneys, in consultation with the tax assessor for appellant school district, prepared for execution by the tax assessor an amended and corrected statement of appellee's personal property, which increased the value of certain items of property over the value listed by appellee in its rendition, and listed items of property that were not in appellee's rendition, and also listed for taxation all of the items of reserve, consisting of the reserve of unearned premiums, reserve for unpaid losses, reserve for taxes, and reserve for reinsurance balances. This corrected rendition was signed officially by said tax assessor and attached to appellee's rendition, in an attempted compliance with the statute authorizing such correction by a tax assessor. In the listing made by appellee, the sum total of the items of these reserves amounts to $8,834,273.37. The sum total of the items listed by appellee in its rendition, and admitted to be subject to taxation, amounts to $8,833,273.67, which is less by $999.70 than the amount of claimed exemptions, and, under appellee's claim of the statutory method of determining the value of the personal property of such an insurance company, subject to taxation, no taxable personal property is shown.

In the listing prepared by the attorneys for appellant, signed by the tax assessor and attached to appellee's rendition, as a proper assessment of appellee's taxable property, after the increase in values of the items listed by appellee, and after the addition of unrendered items of personal property, in which the reserves deducted by appellee in its rendition were not deducted, but were listed and assessed as taxable property, there is shown to be subject to taxation, on the customary 60 per cent. basis, property of the value of $2,300,673.63. If the total amount of the reserves, deducted by appellee in its rendition, should be deducted from the total amount of taxable property, as shown in the listing signed by the tax assessor, and 60 per cent. of this difference be taken, as the customary value of rendition of property in the school district, there would be subject to taxation a balance of $600,109.61.

In addition to the written correction attached to appellee's rendition, there was prepared by appellant's attorneys, in consultation with the tax assessor and signed officially by him, a separate rendition of appellee's personal property, which contains the same figures as to values shown in the attached correction of appellee's rendition, and the same result as to the personal property owned by appellee, subject to taxation. This rendition was made under the statute authorizing the tax assessor to assess unrendered property. This was done, on the theory that, as appellee's rendition did not show any property subject to taxation, there had been in law no rendition made. This was placed with the other renditions. Appellee was duly notified of the action of the tax assessor, in amending and correcting the rendition made, and of the independent rendition made under the unrendered property statute.

Appellant's board of trustees duly appointed H. H. Cleaver, G. V. Straugn, and P. B. Garrett, as a board of equalization of property in the school district for the year 1933. This board organized early in August, 1933, by electing Mr. Cleaver president, and Miss Hawes, deputy in appellant's tax assessor's office, secretary, and sent out a great many notices to taxpayers to appear on certain named dates to show cause why their rendition should not be raised. Such notice was sent to appellee. August 28th was named as the date on which, as appellee understood, there would be a mere informal consultation between its representative and the board of equalization. Neither appellant or its attorneys were notified of this meeting, but became cognizant of such hearing, and duly made their appearances.

The board of equalization—with Mr. Cleaver and Mr. Straugn present, and Mr. Garrett absent, being out of the city—met at the appointed place at 4:15 p. m. August 28, 1933, for the equalizing of the assessment of two property owners, and for an informal conference with appellee; the work of the board as to the other two property owners was finished in a very short time, and then that of appellee

was taken up. The attorney for appellee announced that he understood this meeting was merely for an informal conference in reference to the assessment shown in appellee's rendition, and that he had not come prepared for an open hearing of such matter. The attorneys for appellant stated that they understood that it was to be an open hearing, had come prepared and were ready to present evidence on the claim of the school district in reference to such assessment, and also to present authorities to the board in reference to their contention, but that if it was to be an informal hearing with appellee, they would withdraw until such time as the board would set the matter for an open hearing.

This session became a stormy one from the beginning. The board of equalization took the position that the appearance of appellant's attorneys and the president of the school board at such meeting was an affront to the board of equalization; that if they desired to hear from the attorneys or members of the board of trustees, they would call for them; that they considered the matter one between the board of equalization and the taxpayer, and one in which the school district had no interest; and stated that such parties would be excused. However, the meeting continued with all parties present, when Mr. Straugn called for appellee's assessment, which was handed to him, and he discovered for the first time that there was attached to the assessment the document heretofore described; when he was informed what this was, he had the tax assessor of the district sworn, and asked him if he prepared those papers attached to the assessment. The assessor stated, in effect, that he did not prepare them, but that they were prepared by the attorneys for the board of trustees, and were prepared from a certified copy of appellee's annual report to the commissioner of insurance, showing the value of appellee's assets on December 31, 1932; that before he signed the paper he verified the figures from this report, but that the preparation of same was not his work; whereupon, Straugn said that the attached document would not be considered, and that he and Mr. Cleaver would retire for a short time and consult.

These two members retired, and after a few minutes returned and announced that they had raised appellee's assessment to $215,-000, and asked the attorney for appellee if that was satisfactory, and he said it was; whereupon, Mr. Straugn announced that all of the property in the district had been equalized for taxation, and that the work of the board had been finished, except signing the tax rolls, and that the board of equalization was adjourned. At this time, this notation was made on appellee's rendition: "$330,-760/65%—total assessment $215,000. O. K. H. H. Cleaver, Chrm. 8-28-33."

Prior to the meeting of the board of equalization, on August 28th, appellant's board of trustees had discharged the tax assessor, who had signed the assessment made for the purpose of amending and correcting appellee's rendition, and also who had signed the supplemental assessment of unrendered property owned by appellee, and a new assessor had been appointed.

Subsequent to this meeting of August 28, 1933, the board of trustees discharged the board of equalization and appointed three other persons, to pass as a board of equalization upon appellee's assessment of personal property. This board organized and set a day in October, 1933, at which time they would take under consideration the matter of equalizing the property assessment against appellee, and notified appellee of the date of the contemplated hearing. It appears to have been contemplated by the board of trustees that no other work of the old board of equalization would be disturbed. In other words, the appointment appears to have been made to complete what the board of school trustees believed to be the incompleted work of equalizing taxes. Had not a temporary restraining order been granted, preventing the meeting of this new board, it would have met and functioned in respect to appellee's taxable property, as shown by its rendition, and the attempted corrected rendition, heretofore described, as well as the attempted assessment of unrendered property. Prior to the appointment of this new board of equalization, the new tax assessor again attempted to amend the rendition made by appellee in the precise manner that had been done theretofore, and also made an independent assessment of unrendered property that had likewise been made theretofore. In view of the work in this respect by the former assessor, this work was useless.

Appellee's theory of this case, as reflected by its pleading, is that the action of the board of equalization at the meeting of August 28th, in fixing the value of appellee's property at $215,000, is binding upon appellants, and having been accepted by appellee is binding upon it, and the board of trustees has no power to repudiate such assessment; that in the absence of allegations and proof of fraud on the part of the board of equalization, in the performance of its duties, such assessment is incontestable, and that appellant has no right,

either in law or in equity, to harass appellee, by requiring it to meet before another board of equalization and thrash out the same matter; that appellee has a right to appeal to a court of equity for relief from further harassments, and from being subjected to costs incident to the contest contemplated by appellants, and a right to require appellants to accept as a finality the work of the board of equalization, compel acceptance of the taxes under the assessment which it has tendered, and, by order of the trial court, had paid into court, and to issue a tax receipt therefor. In conformity to this theory, appellee instituted this injunction suit, and the amended petition contains very full and complete allegations in respect to this theory, prays for a permanent injunction against appellant and its officers from attempting in any way to go behind the action of the board of equalization, and also prays that a mandamus issue against the board of trustees and appellant's tax assessor, compelling the acceptance of the amount of the taxes shown to be due by the assessment made by the board of equalization, and compelling the issuance of receipts therefor. The said amount of taxes was tendered before the institution of the suit and, as stated, was paid into the registry of the court. The judgment of the trial court granted appellee all of the relief prayed for.

As reflected by its pleadings, appellant's contention is that, notwithstanding article 5057a, Vernon's Ann. Civ. St., permitting the deduction of the reserves required to be maintained by appellee as a domestic fire insurance company, from its taxable assets, such reserve is not exempt from taxation and cannot be so deducted, and that the board of equalization did not have the power to make such exemption, and the tax assessor did not have the power to amend or correct the rendition by listing as taxable property the reserves deducted by appellee. This contention is based on the theory that the provisions of said article 5057a, authorizing such exemption, is unconstitutional, and that it has the legal right to litigate such contention in court, and cannot be cut off from the exercise of such right by the restraining power of a court of equity; that, in addition to listing for taxation the reserves, the amended and corrected rendition, listed certain personal property at a higher value than the same property is listed by appellee, and certain property owned by appellee, other than the reserves, not listed in the rendition by appellee, but listed in the amended assessment, should have been considered by the board of equalization, and evidence and legal argument heard thereon; that the assessment of $215,000, as being the value of all the personal property owned by appellee, subject to taxation, is a mere arbitrary and lump sum assessment, no part of same being itemized so that it can be determined on what the board acted; that the action of the board, in refusing to consider the amended and corrected assessment, was arbitrary, not authorized by law, and contrary to its statutory duties; that for the reasons above stated, and for other alleged reasons, the attempted equalization of the appellee's property for taxation is void and cannot be considered as the legal action of the board of equalization.

Appellant also contends that the action of the board of equalization, on August 28th, in reference to the equalizing of the property of appellee, constituted a refusal of such board to perform its statutory duties, and thereby gave the board of trustees the power to appoint another board of equalization in order that such statutory duties may be performed, and for which reason the board of trustees was acting within its power when it discharged the old board of equalization, after it had adjourned without performing the duties hereinbefore mentioned, and the appointment of a new board, in order that such statutory duties should be performed.

Appellants further contend that the ruling of the court, in sustaining special exceptions to their pleadings, setting up the above defenses to appellee's claim that the action of the board of equalization was final, is error, and have properly presented such contention to this court. There are a great many other questions raised. Some of them will be discussed and some will not, but those we have mentioned are what we conceive to be the decisive questions in this case.

All of the questions raised by appellant, in its assignments of error and propositions of law, must pass out, if appellee is correct in its first general counter proposition, which reads: "The Board of Equalization of Highland Park Independent School District, composed of H. H. Cleaver, G. V. Straugn and P. B. Garrett, being the duly appointed, qualified, and acting Board of Equalization, and being both the de facto and the de jure Board for 1933, was an independent tribunal to determine the value of the property in said District, and, having actually passed upon the value of all the Republic Insurance Company's personal property and fixed its value for the purpose of taxation in said District, and Republic Insurance Company having accepted said valuation, its action was final and conclusive and not subject to change or review

by the Board of Trustees of the School District, either directly or indirectly through the appointment of another Board of Equalization, and the attempt by the trustees to change or disregard the action of the Board of Equalization was such an usurpation of power as to entitle appellee to the relief at the hands of a court of equity which was accorded it."

■ It is the settled law of this state that the action of a board of equalization, in passing upon the value of property assessed for taxes, by the state or any of its municipal subdivisions, is final and cannot be disturbed by the courts, or any other tribunal, provided there is the absence of pleaded and proven fraud, and provided further that such board, in fixing the value of the assessed property, has performed such duty substantially as in the manner prescribed by statute, and it is this settled rule of law that appellee invokes in the instant case. 37 Cyc. 1108 IV; Cooley on Taxation, vol. 3, p. 2400; section 18, art. 8, Texas Constitution; article 7206, R. C. S. 1925; article 7212, R. C. S. 1925; article 2758, R. C. S. 1925; article 1054, R. C. S. 1925; Clawson Lumber Co. v. Jones, 20 Tex. Civ. App. 208, 49 S. W. 909; Moody v. City of Galveston, 21 Tex. Civ. App. 16, 50 S. W. 481 (writ of error refused); State v. Couts' Estate (Tex. Civ. App.) 149 S. W. 281; Chicago, R. I. & G. R. Co. v. State (Tex. Civ. App.) 241 S. W. 255, affirmed (Tex. Com. App.) 263 S. W. 249; Thompson v. Devine Independent School Dist. (Tex. Civ. App.) 249 S. W. 887 (writ of error refused); Allen v. Emery Independent School Dist. (Tex. Civ. App.) 283 S. W. 674; Cobb v. Downing (Tex. Civ. App.) 1 S.W.(2d) 508; Early v. City of Waco (Tex. Civ. App.) 3 S.W.(2d) 131; Zachry et al. v. City of Uvalde (Tex. Civ. App.) 24 S.W.(2d) 517; Rachford v. City of Port Neches (Tex. Civ. App.) 46 S.W.(2d) 1057. Do the proven facts, in respect to the manner in which the board of equalization made the assessment of appellee's personal property, bring the assessment within this rule? This will require an examination of the controlling statutes.

Section 18 of article 8 of our Constitution declares that the Legislature shall provide for equalizing, as near as may be, the valuation of all property subject to or rendered for taxation, and that the commissioners' court shall constitute a board of equalization. Article 2758 gives appellant all the taxing powers possessed by cities and towns. Article 1048 provides that any city or town must appoint annually an equalization board, composed of three members, each a qualified voter, a resident property owner of the town or city for

which he is appointed, and that before such board enters upon its duties, it shall be sworn to discharge faithfully and impartially all of the duties incumbent upon it by law. Article 7211, among other things, declares that, " * * * if the assessor is satisfied that the value [value placed by the property owner] is below the reasonable cash market value of such property, he shall at once place on said rendition opposite each piece of property so rendered an amount equal to the reasonable cash market value of such property at the time of its rendition. * * * Such officer, to furnish such rendition, together with his valuation thereon and the oath of such person, firm or officer of any corporation, if any such oath has been made, to the commissioners' court of the county in which said rendition was made, which court shall hear evidence and determine the true value of such property," as of the taxing date.

Among other provisions, article 7212 declares that " * * * when any assessor in this State shall have furnished said court with the rendition as provided for in the preceding article, it shall be the duty of such court to call before it such persons as in its judgment may know the market value or true value of such property, as the case may be, by proper process, who shall testify under oath the character, quality and quantity of such property, as well as the value thereof. Said court, after hearing the evidence, shall fix the value of such property in accordance with the evidence so introduced and as provided for in the preceding article; and their action in such case or cases shall be final."

Article 1045 makes it the duty of the assessor of taxes to make out a list of all personal property which has not been given in for assessment, according to the provisions of this title, and assess the same in the name of the owner; if it be known, and, if not, as unknown; the value of such property so assessed shall be determined by the board of equalization. Article 1053 provides for notice in respect to the property owner whose assessment is questioned as to value, and provides that, within not less than ten nor more than fifteen days, the property owner has the right to appear before the court at the time set for consideration of his assessment. Article 1054 provides, in effect that, after such hearing and the board has fixed the value of property for assessment, then "the action of said board at said meeting shall be final, and shall not be subject to revision by said board or by any other tribunal."

It is the policy of this state to compel rendition by a property owner of all property sub-

ject to taxation, at a fair taxable value, to the end that every property owner will bear his just burden of taxation. This policy clearly appears from the above statutory quotation. For the accomplishment of such purpose, as shown by the statutory provisions quoted above, it is made the duty of the tax assessor to examine each item of an owner's rendition delivered to a tax assessor, to see that such rendition complies with such policy, and if the assessor is convinced that it does not, then he is to place his valuation of the items opposite same in the rendition, and notify the property owner of such action. It is also the statutory duty of the tax assessor, as shown by the above quotations, to determine from investigation whether such property owner has omitted any property from his rendition, and, if it is shown that there is such an omission, to make a supplemental or independent assessment of such omitted property at what the assessor conceives to be its fair taxable value, and to notify the property owner of such action.

When the tax assessor has performed his duty in this respect, and delivered the corrected rendition, and the supplemental assessment of omitted items of property to the board of equalization, it becomes the duty of such board, as shown by the quoted provisions of the statutes, to determine the contested issue of the taxable value of the owner's property, as made by the value placed thereon by the owner in his rendition, and by the corrected value placed thereon by the tax assessor. It also becomes the duty of the board of equalization to determine the issue as to whether such property owner had omitted items of property from his rendition, as shown by the supplemental assessment of such property as omitted, and to fix the taxable value thereon in the same manner.

█ The issue as to the taxable value thus made by the property owner and the tax assessor, as well as the issue of omitted property and its value, cannot be determined by any arbitrary or unauthorized manner of the board of equalization. Nor can such issue be determined by a mere agreement, without a hearing, between the board of equalization and the property owner, for the municipality (in the instant case, the Highland Park Independent School District), as well as the property owner, has an interest in the determination of these issues as to value and unrendered property. Again, the above-quoted provisions of the statutes mandatorily prescribe how such issues shall be determined when it is declared that it shall be the duty of the board of equalization "to call before it such persons as in its judgment may know the market value or true value of such property, as the case may be, by proper process, who shall testify under oath the character, quality and quantity of such property, as well as the value thereof." Article 7212, supra. It is only when this character of a disputed issue as to the taxable value of a property owner has been determined in the statutory manner does the law place a finality on the action of the equalization board. Chicago, R. I. & G. R. Co. v. State (Tex. Civ. App.) 241 S. W. 255; Id. (Tex. Com. App.) 263 S. W. 249; Ramey v. City of Tyler (Tex. Civ. App.) 45 S.W.(2d) 359; Republic Ins. Co. v. Highland Park Independent School Dist. (Tex. Civ. App.) 57 S.W.(2d) 627.

█ In the instant case, the undisputed evidence establishes that appellee's rendition shows no personal property subject to taxation, and that the board of equalization, as to value, raised its assessment from no taxable property to taxable property of the value of $215,000, without indicating the items of property upon which this value was placed, without the hearing of evidence, and hence it is a mere arbitrary lump sum assessment. The undisputed evidence further shows that there was a corrected assessment as to the value attached to appellee's rendition, and that the board of equalization refused to take cognizance of such corrected assessment, but rejected same on the ground that it had been prepared for the tax assessor by appellant's attorneys, though it was signed officially by the tax assessor and thereby became his official act. The undisputed evidence further shows that a supplemental rendition of omitted property had been signed by the tax assessor, and prepared in the same manner, and that no cognizance whatever was taken of this assessment. The board of equalization thereby refused to recognize the statutory duty of the tax assessor to make an issue, in the manner prescribed by statute, of the value of property rendered for taxes.

Under the above authorities, the action of the board of equalization, in respect to appellee's property, was void, and amounted to a failure of such board to do its statutory duty in respect to appellee's assessment. We therefore hold that the action of the board of equalization, on the matter in question, is void, and can furnish no basis for the issuance of a writ of injunction, or for the issuance of the mandamus to compel appellants to accept the tender of taxes and issue its receipt therefor.

When the board of equalization refused to perform its statutory duties, in respect to determining the issues as to the value of appellee's taxable personal property, and adjourned all hearings as to the equalization of taxable property, thereby leaving unperformed the work of equalizing appellee's personal property, we are of opinion that appellants' trustees had the power to appoint a new equalization board to perform such statutory duties. The work of the new board could have been performed within the legal time for equalizing appellee's taxable personal property, and we are of opinion that such new board was legally appointed and could have legally performed its work, had it not been forbidden by the issuance of the restraining order. Otherwise, appellant would be denied its statutory right to have determined by a legally constituted equalization board the issue of the taxable value of appellee's personal property, made in the manner prescribed by statute. We therefore hold that the court erred in enjoining the new board from performing this duty.

Appellants strenuously contend that the items of reserve in appellee's rendition, claimed as exempt, are not in law exempt, and so these items were assessed as taxable property, in the amount scheduled by appellants by the tax assessor, and attached to appellee's rendition, and also rendered as omitted property in the independent rendition signed by the tax assessor. With correction of a slight error in addition, these items are:

Reserve for unearned premiums $1,542,532.05
Reserve for unpaid losses...... 125,026.56
Reserve for taxes............. 115,120.00
Reserve for re-insured balances 51,594.37

Making a total of— ...... $1,834,272.98

Article 5057a, Vernon's Ann. Civ. St., reads: "That Fire Insurance Companies and Casualty Companies incorporated under the laws of this State shall hereafter be required to render for State, County and Municipal taxation all of their real estate as other real estate is rendered. All personal property of such insurance companies shall be valued as other property is valued for assessment in this State in the following manner; From the total valuation of their assets shall be deducted the reserve and from the remainder shall be deducted the assessed value of all real estate owned by such companies and the remainder shall be the taxable personal property of such companies, to be assessed as other property."

Appellants contend that this statute, permitting the value of such reserves to be deducted from other personal property of a fire insurance company, is unconstitutional. The applicable constitutional provision is article 3, § 55, which declares that "the Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any incorporation or individual, to this State, or to any county or other municipal corporation therein." Another provision (article 8, § 4) is that "the power to tax corporations and corporate property shall not be surrendered or suspended by acts of the Legislature, by any contract or grant in which the State shall be a party."

Article 5057a is in substance the same as article 4754, R. C. S., giving the rule to be observed in determining the taxable value of the personal property of a life insurance company, and the constitutionality of the latter statute had been declared by the Supreme Court previous to the enactment of article 5057a. Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S. W. 778; American Indemnity Co. v. City of Austin, 112 Tex. 239, 246 S. W. 1019; City of Waco v. Amicable Life Ins. Co. (Tex. Com. App.) 248 S. W. 332, affirming (Tex. Civ. App.) 230 S. W. 698.

The latter case holds that, for purposes of taxation under this article (4754), reserve of life insurance companies is not an asset but a liability or debt, deduction of which from the gross value of the company's property, in determining taxable valuation of its personalty, is authorized. These authorities, we think, apply equally to sustain the validity of article 5057a, in respect to fire and casualty insurance companies. We therefore overrule this contention of appellants, and hold that the proper method of securing the valuation of personal property of a fire and casualty insurance company is the method given in article 5057a. The reserve referred to in this statute is the reserve required to be maintained by the commissioner of insurance, under subdivision 7, art. 4682, R. C. S. If the reserves deducted by appellee are those authorized by this law, then the deduction was correctly made. The tax assessor's rendition of all the items of reserves for taxation calls in question, not only the right of appellee to deduct the sum of the reserves from the total value of its personal property, but also the correctness of each item of the reserves, and in such a case it becomes the duty of the property owner to show that the reserve items are such that it is required to maintain.

■■ Another item in the assessor's corrected rendition is in the sum of $402,671.87. This item, appellee claims, was an investment in tax free government bonds, made prior to the taxing date of January 1, 1933, and therefore is not subject to taxation, and hence not rendered as taxable property. On the other hand, appellant claims that this amount of money was converted into such bonds, on December 28, 1932, for the fraudulent purpose of escaping the payment of taxes on such sum, with no intention of subsequently keeping and owning said bonds, and was again converted into money, on or about January 28, 1933. If such bonds were purchased with the sole intent of evading taxation, then such an action would be fraudulent and render said sum subject to taxes. This rendition by the assessor made an issue of fact, to be first determined from evidence by the board of equalization. The fact that the bonds were bought about three days before the taxing date of January 1, 1933, and sold within a month after such taxing date, is such a circumstance as calls for an explanation from appellee as to its intent in making the purchase.

Numerous other questions are raised, which we do not find it necessary to discuss for a disposition of this case.

It necessarily follows that this case must be reversed and rendered for appellant, dissolving the injunction issued and vacating the order directing the issuance of a mandamus to compel appellant school district to accept the taxes in the amount paid into court, under the finding of the board of equalization, and it is so ordered.

Reversed and rendered, injunction dissolved, and order for mandamus vacated.

### On Rehearing.

LOONEY, Justice.

■ In their motion for rehearing, appellants contend that we erred in upholding the constitutionality of article 5057a, Vernon's Ann. Civ. St., thereby, in effect, holding that appellee's reinsurance reserve in the sum of $1,542,532.05 is deductible from its assets for taxation purposes.

On reconsideration, the majority are of opinion that the holding complained of is erroneous. Such holding is necessarily predicated on the concept that life and fire insurance reserves are of the same nature, are liabilities, hence not taxable as property belonging to the companies.

The calculated reserve of a life insurance company belongs to the policyholder. The statute makes it the duty of the commissioner of insurance to calculate the net value of all life policies, and he is charged with the duty of seeing to it that the company keeps on deposit solvent securities sufficient to protect policyholders in the amount of the net value of their policies (see subdivisions 3 and 4, art. 4682, and subdivisions 1 and 2, art. 4688, R. S.). Such, however, is not the nature of a fire insurance reserve for unexpired fire risks (see subdivision 7, art. 4682, R. S.), composed of a portion of the gross premiums collected but not yet earned on policies in force. Such premiums may never be used for the purpose reserved, that is, for reinsurance, as a fire policy is for a limited term only and may expire without a necessity arising for reinsurance, which in its very nature is contingent. The difference in the character of reserves of life and fire companies, we think, determines their respective taxabilities.

In the recent case of State ex rel. v. Gehner, 320 Mo. 691, 8 S.W.(2d) 1068, 1072, the Supreme Court of Missouri, quoting from an annotation in 13 A. L. R. 186, 204, on the subject of taxing insurance reserves, had this to say: "There is an essential distinction between the 'legal reserve' of a life insurance company and the 'unearned premiums' or 'premium reserve' of an insurance company other than life. The reserve fund of a life insurance company is properly regarded as an indebtedness, because the death of every person it has insured is inevitable, and its disbursement in payment of policies is an absolute certainty. The only uncertainty in the matter is the order in which the policies kept in force will have to be paid. * * * The reinsurance reserve in fire insurance is a fund composed of the portions of gross premiums of policies in force, which have not been earned by the insuring company, and its chief purpose is to enable the company to rid itself of liability for future possible claims when continued excessive losses threaten to use up its surplus and impair its capital to such an extent as may endanger the security of the policy holders, either by paying back the unearned premiums and canceling the policies, or by paying them over to a new insurer to assume and carry out the policy risks.' "

The annotation in 13 A. L. R., supra, is replete with citations from different jurisdictions, practically in accord on the proposition that the reserve of a life insurance company is an indebtedness, in that death of the insured is inevitable, and the disbursement of the reserve in payment of policies is certain. On the other hand, the authorities are also in accord in holding that, as a fire policy is for a limited term only, the insurer may never

have to reinsure, hence the reserve is based upon a mere contingency.

A case in point is Wheeling Fire Ins. Co. v. Board of Equalization, 111 W. Va. 161, 161 S. E. 427, 431, 78 A. L. R. 544, where the Supreme Court of Appeals of West Virginia discussed every phase of the question now under consideration. That court said: "The controlling question is whether unearned premiums of an insurance company are 'indebtedness' within the meaning of our statute, above quoted. In approaching this question, it must be borne in mind that the Constitution requires that all property shall be taxed to bear the burdens of government except designated properties which may, by law, be exempted. It must be clear, therefore, that the unearned premiums in the hands of the company, used and invested by it, constitute 'indebtedness'; otherwise it would escape taxation. If it be indebtedness, then some creditor of the company owns that indebtedness and the property would be taxed to that creditor as money, credits, or investment. In this manner only would the sum of money here involved be taxed. Who is that creditor? It is argued that the policyholder is the creditor, for he has a right to cancellation of his contract and a return of the unearned premiums. When he does so and receives back the money, he would be taxed on the money due him, or in his hands. We do not think it would be practical to assess his right of cancellation under the policy contract. The statute should be strictly construed to prevent property from being withdrawn from taxation. * * * The liability of the company to repay to policyholders if perchance they call for cancellation, the losses which may occur by fires, if, perchance, fires occur, and costs for reinsurance, if, perchance, reinsurance be issued, depends upon contingencies which may or may not happen. When these contingencies happen, the liability is changed to a fixed indebtedness to some particular person. * * * " Citing People's Fire Ins. Co. v. Parker, 34 N. J. Law, 479, affirmed 35 N. J. Law, 575; Tripp v. Fire Ins. Co., 12 R. I. 435. To the same effect see: Trenton v. Insurance Co., 77 N. J. Law, 757, 73 A. 606; People ex rel. v. Davenport, 91 N. Y. 574.

A fire insurance company is not compelled by any law of this state to reinsure; the nearest approach to such a requirement is found in the provisions of subdivision 1, art. 4932, R. S., as follows: "No fire, fire and marine, marine or inland insurance company doing business in this State shall expose itself to any one risk, except when insuring cotton in bales, and grain, to an amount exceeding ten per cent. of its paid up capital stock, unless the excess shall be insured by such company in some other solvent insurance company legally authorized to do business in this State." Whether or not a fire company will ever expose itself in any one risk, in excess of 10 per cent. of its paid-up capital stock, requiring the excess to be reinsured as provided by this statute, is contingent, hence may never occur.

So, in harmony with the consensus of opinion on the subject, we conclude that the item of $1,542,532.05, claimed by appellee as its unearned premium reserve, is taxable, unless it is exempt from taxation under the provisions of article 5057a.

The controlling provisions of the Constitution, being so well known, will not be set out at length in this connection. Section 1, art. 8, provides that "all property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value," mentioning certain exceptions not involved here. Section 2, art. 8, authorizes the Legislature, by a general law, to exempt from taxation certain enumerated properties, not including property of the nature of that under consideration, concluding with the language, " * * * And all laws exempting property from taxation other than the property above mentioned shall be null and void." Section 4, art. 8, provides that "the power to tax corporations and corporate property shall not be surrendered or suspended by act of the Legislature, by any contract or grant to which the State shall be a party."

Therefore, having determined, as we think correctly, that appellee's unearned premium reserve represents property, and not indebtedness, in view of the provisions of the Constitution just referred to, we think the legislative attempt to exempt the reserve from taxation was ineffectual, and that the provision of article 5057a, authorizing fire insurance companies to deduct such reserve from the total valuation of their assets rendered for taxation, is unconstitutional and void.

We do not deem it necessary to lengthen the discussion. The reserve being property belonging to appellee, neither excepted by the Constitution from the general rule, nor included in any class of property the Legislature was authorized to exempt from taxation, its attempt to do so was and is "null and void." In this connection also see: Graham v. City of Fort Worth (Tex. Civ. App.) 75 S. W.(2d) 930; City of San Antonio v. Y. M. C. A. (Tex. Civ. App.) 285 S. W. 844; Santa

Rosa Inf. v. City of San Antonio (Tex. Com. App.) 259 S. W. 926; Trinity, etc., Church v. City of San Antonio (Tex. Civ. App.) 201 S. W. 669; City of Houston v. Scottish, etc., Ass'n, 111 Tex. 191, 230 S. W. 978; Texas Employers' Ins. Ass'n v. City of Dallas (Tex. Civ. App.) 5 S.W.(2d) 614.

Therefore, appellants' motion for rehearing is sustained, the original holding of the court, affirming the constitutionality of article 5057a, in the respect discussed, is set aside, and the same is held unconstitutional and void, affording appellee no right or authority to deduct its said reserve from the total valuation of its taxable assets. Chief Justice JONES dissents from the view herein expressed, and adheres to the doctrine announced in the original opinion.

JONES, Chief Justice (dissenting).

When, on motion for rehearing, this court by the opinion of the majority held article 5057a, Vernon's Ann. Civ. St., unconstitutional, the writer dissented, and on February 16, 1935, filed a dissenting opinion. In the light of the second motion for rehearing filed herein, the writer desires to withdraw such dissenting opinion and to file this opinion in lieu thereof.

Article 4754, R. S., and article 5057a are very similar statutes; the former applying to the method in which the taxable value of the personal property of a life insurance company must be ascertained, and the latter providing the method in which the taxable value of the personal property of a fire insurance company must be ascertained. Neither of these statutes can properly be termed an exemption statute. Article 4754 reads: "Insurance companies incorporated under the laws of this State shall hereafter be required to render for State, county and municipal taxation all of their real estate as other real estate is rendered. All personal property of such insurance companies shall be valued as other property is valued for assessment in this State in the following manner: From the total valuation of its assets shall be deducted the reserve being the amount of the debts of insurance companies by reason of their outstanding policies in gross, and from the remainder shall be deducted the assessed value of all real estate owned by the company and the remainder shall be the assessed taxable value of its personal property. Home insurance companies shall not be required to pay any occupation or gross receipt tax."

Article 5057a reads: "That Fire Insurance Companies and Casualty Companies incorporated under the laws of this State shall hereafter be required to render for State, County and Municipal taxation all of their real estate as other real estate is rendered. All personal property of such insurance companies shall be valued as other property is valued for assessment in this State in the following manner; From the total valuation of their assets shall be deducted the reserve and from the remainder shall be deducted the assessed value of all real estate owned by such companies and the remainder shall be the taxable personal property of such companies, to be assessed as other property."

In connection with article 4754 must be read subdivisions 3 and 4, art. 4682, to understand the meaning of the term "reserve," so as to identify what is denominated therein a debt. Subdivision 3 declares that the commissioner of insurance each year shall "calculate or cause to be calculated in his office by an officer or employee of his department, the net value on the thirty-first day of December of the previous year of all the policies in force on that day in each life or health insurance company doing business in the State, upon the basis and in the manner prescribed by law." Subdivision 4 of said article declares that the commissioner of insurance, after he has determined the net value of all policies, shall "see that the company has in safe securities of the class and character required by the laws of this State the amount of said net value of all its policies, after all its debts and claims against it and at least one hundred thousand dollars of surplus to policy holders have been provided for."

It is thus made clear that the gross sum of the net value of life insurance policies, in force on December 31st of the previous year, as calculated by the commissioner of insurance, constitutes the amount of the reserve of life insurance companies. It is equally clear that the amount of this reserve is the amount declared by article 4754 to be "the debts of insurance companies."

In connection with article 5057a should be read subdivision 7, art. 4682, for an understanding of the meaning of the term "reserve," used in such statute. This section declares that the commissioner of insurance "shall calculate the reinsurance reserve for unexpired fire risks by taking fifty per cent. of the premiums received on all unexpired risks that have less than one year to run, and a pro rata of all premiums received on risks that have more than one year to run." The sum represented by the calculation of the commissioner of insurance is the "reserve" and represents the sum directed to be deducted from the assets of a fire insurance compa-

ny, so as to determine the taxable assets of such company. The Legislature, by necessary implication, declared such reserve to be a debt, as was directly so pronounced as to life insurance reserves in article 4754.

It was held by the Supreme Court, in the case of the City of Waco v. Amicable Life Insurance Co. (Tex. Com. App.) 248 S. W. 332, that the Legislature was within its power in holding that the reserve of a life insurance company is not an asset, but a liability or debt, deduction of which from the gross value of the company's property, in determining taxable valuation of its personalty, is authorized.

The power of the Legislature to declare a fire insurance company reserve a debt has not been decided by any higher court in this state. The legislative theory of compelling life insurance companies and fire insurance companies to create the reserve provided for by law is precisely the same. The theory as to life insurance companies is for every such company to have on hand money, or its equivalent, sufficient to meet the contingency of the maturity of all life insurance policies; as to fire insurance companies, the theory is to have on hand money, or its equivalent, sufficient to meet in any one year the maturity of any policy by reason of a fire, also to pay back to the policyholder, who has seen fit to cancel his policy, the unearned portion of the premiums paid, and to pay to other companies for reinsurance such an amount which a sound business policy would direct should be reinsured. It was the legislative judgment that 50 per cent. of the unearned premiums collected on fire policies would meet any debt of this character that might mature within a given year, and hence declared, for the purpose of taxation, the sum representing this 50 per cent., required to be set aside for such purpose, a debt and not an asset.

Section 1, art. 8, of the Constitution reads: "All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

Article 4754 merely directs the method as to how the taxable value of the personal property of a life insurance company may be as-certained, by directing its debts to be deducted from its assets to obtain such taxable value. Article 5057a prescribes the same method to ascertain the taxable value of the personal property of a fire insurance company. The method adopted by both statutes is authorized by the provision of the Constitution, quoted above.

The writer, therefore, believes that the constitutionality of article 5057a rests upon precisely the same basis as article 4754, and that as the latter article has been declared to be constitutional, it necessarily follows that the other article should be declared constitutional. See authorities cited on this question in the original opinion.

### On Second Motion for Rehearing.

JONES, Chief Justice.

In its second motion for rehearing, appellee urges that, inasmuch as it was not necessary to pass upon the constitutionality of article 5057a, in the conclusion reached by this court that this cause should be reversed and rendered, dissolving the injunction, restraining appellants and the new board of equalization from taking any action in reference to appellee's taxes, and in setting aside the mandamus compelling appellants to accept the amount of taxes assessed against appellee by the old board of equalization, the pronouncement against the constitutionality of the statute is pure dictum and has no place in the decision.

We cannot subscribe to this view of appellee, and hold that inasmuch as, under the judgment of this court, the new equalization board must pass on the questions raised, including the question of the taxability of the reserve, it was the plain duty of this court to instruct the equalization board in reference to this contested item of taxation, and therefore overrule this contention.

The second motion for rehearing has been considered by the court and, in all things, overruled.

JONES, Chief Justice, dissents from the holding of the majority in the opinion on the first motion for rehearing that article 5057a is unconstitutional.