

# THE ATTORNEY GENERAL
# OF TEXAS

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

May 10, 1947

Hon. E. F. Campbell
County Attorney
Fisher County
Roby, Texas

Opinion No. V-194

Re: The authority of the Commis-
sioners' Court, sitting as a
Board of Equalization, to con-
sider an assessment on its own
motion and without the Assessor's
request or suggestion, in re-
gard to raising valuations.

Dear Mr. Campbell:

In your letter of April 9, 1947 you request the
opinion of this department upon the following question, con-
cretely stated in your letter as follows:

"When the Tax Assessor for the County,
assesses real estate in the regular way and the
land owner signs it and swears to it as provided
in Article 7211 Vernon Civil Statutes and the
assessor accepts it as made by the land owner,
does the Commissioners Court sitting as a board of
equalization have a right to take this up on their
own motion without any suggestion, notation, re-
quest or complaint of any kind from the Assessor
and after due notice to the land holder raise or
lower the rendition as to value especially to raise
the value?"

As a preface to our opinion we point out briefly the
constitutional and statutory provisions pertaining to the Tax
Assessor and the Commissioners' Court, (Board of Equalization).
Suffice it to say that the Office of Tax Assessor is a constitu-
tional office and is provided for by Article VIII, Section 18 of
the Constitution, and now combined with the office of Tax Collec-
tor by the Constitution as amended November 8, 1932. Therefore,
by the terms of Article 7181a V.C.S. the terms are used inter-
changeably, and refer to the one office of Assessor and Collec-
tor of taxes. Notwithstanding the consolidation of the two
offices there still remains certain statutory duties and func-
tions, separate and apart and attached to each respective office,
as existed at the time of the consolidation.

Therefore, for the purpose of this opinion we shall

first confine ourselves to the duties imposed by statute upon the Tax Assessor.

Article 7211 V.C.S. provides:

"Hereafter when any person, firm or corporation renders his, their or its property in this State for taxation to any tax assessor, and makes oath as to the kind, character, quality and quantity of such property, and the said officer accepting said rendition from such person, firm or corporation of such property is satisfied that it is correctly and properly valued according to the reasonable cash market value of such property on the market at the time of its rendition, he shall list the same accordingly; but, if the assessor is satisfied that the value is below the reasonable cash market value of such property, he shall at once place on said rendition opposite each piece of property so rendered an amount equal to the reasonable cash market value of such property at the time of its rendition, and if such property shall be found to have no market value by such officer, then at such sum as said officer shall deem the real or intrinsic value of the property; and if the person listing such property or the owner thereof is not satisfied with the value placed on the property by the assessor, he shall so notify the assessor, and if desiring so to do to make oath before the assessor that the valuation so fixed by said officer on said property is excessive; such officer to furnish such rendition, together with his valuation thereon and the oath of such person, firm or officer or any corporation, if any such oath has been made, to the commissioners' court of the County in which said rendition was made, which court shall hear evidence and determine the true value of such property on January 1, 19___ (here give year for which assessment is made) as is herein provided; such officer or courts shall take into consideration what said property could have been sold for any time within six months next before the 1st day of January of the year for which the property is rendered."

In addition to Article 7211 quoted above the following provisions direct the Assessor to transmit to the Commissioners' Court (Board of Equalization) assessments of rendered and unrendered property:

"Article 7218

"The assessor of taxes shall submit all the lists of property rendered to him prior to the first Monday in June to the board of equalization of his County on the first Monday in June or as soon thereafter as practicable, for their inspection, approval, correction or equalization . . . . ."

"Article 7206

". . . . The assessors of taxes shall furnish said board on the first Monday in May of each year, or as soon thereafter as practicable, a certified list of names of all persons who either refuse to swear or to qualify or to have signed the oath required by law, together with the assessment of said person's property made by him through other information; and said board shall examine, equalize and correct assessments so made by the assessor, and when so revised, equalized and corrected, the same shall be approved."

"Article 7217

"The assessor of taxes shall furnish the board of equalization on the first Monday in June of each year, or as soon thereafter as practicable, a certified list of names of all persons who either refused to swear or qualify or to sign the oath as prescribed in this title; also a list of the names of those persons who refused to render a list of taxable property as required by this title . . ."

The foregoing statutory provisions cover generally the duties imposed upon the Tax Assessor in receiving the rendition of property owners at the value set by them in making voluntary renditions of their property for the purpose of taxation and changes made in said renditions by the Tax Assessor as to value and the transmission of such renditions, whether changed by him or not, to the Commissioners' Court (Board of Equalization) for the purpose of equalizing and correcting the values shown by the rolls.

When he has transmitted the renditions to the Commissioners' Court for its official action, he has completed all that is required of him until the Commissioners' Court has acted upon the same as the Board of Equalization.

We pass next to the constitutional and statutory duties of the Commissioners' Court as a Board of Equalization. The Commissioners' Court is a constitutional court provided for by

Article V, Section 1, of the Constitution which is as follows:

> "The judicial power of this state shall be
> vested in one Supreme Court, in Courts of Civil
> Appeals, in a Court of Criminal Appeals, in District
> Courts, in County Courts, in <u>Commissioners Courts</u>,
> in Courts of Justices of the Peace, and in such
> other courts as may be provided by law." (Emphasis
> supplied)

The jurisdiction of the Commissioners' Court is defined in the latter part of Section 18 of Article V of the Constitution as follows:

> "The county commissioners so chosen, with the
> county judge, as presiding officer, shall compose
> the County Commissioners Court, which shall exercise
> such powers and jurisdiction over all <u>county business</u>,
> as is conferred by this Constitution and the laws of
> the State or as may be hereafter prescribed."
> (Emphasis supplied)

There is, however, an express limitation upon the jurisdiction thus conferred upon the Commissioners' Court, that is, it must be "county business".

The Constitution has further expressly conferred upon the Legislature the power to provide, as nearly as may be, the valuation of all property subject to or rendered for taxation. This is provided for by Article VIII, Section 18 of the Constitution as follows:

> "The Legislature shall provide for equalizing,
> as near as may be, the valuation of all property
> subject to or rendered for taxation, (the County
> Commissioner's Court to constitute a board of
> equalization); and may also provide for the class-
> ification of all lands with reference to their
> value in the several counties."

This brings us to your concrete problem of whether or not the Commissioners' Court (Board of Equalization) may act upon its own motion in equalizing value without its jurisdiction in this regard being first invoked by the Tax Assessor. The answer to this question is in the affirmative. We discuss briefly our reasons for this conclusion. As above noted, Section 18 of Article VIII of the Constituion requires the Legislature to "provide for equalizing as near as may be, the valuation of all property subject to or rendered for taxation." Pursuant to this constitutional mandate the Legislature has by the enactment of

Articles 7206 and 7212 V.C.S. provided for equalizing the valuation of all property subject to or rendered for taxation.

The terms of Article 7206 are:

"Each commissioners court shall convene and sit as a board of equalization on the second Monday in May of each year, or as soon thereafter as practicable before the first day of June, to receive all the assessment lists or books of the assessors of their counties for inspection, correction or equalization and approval."

Article 7212 V.C.S. provides:

"The boards of equalization shall have power, and it is made their official duty, to supervise the assessment of their respective counties, and, if satisfied that the valuation of any property is not in accordance with the laws of the State, to increase or diminish the same and to affix a proper valuation thereto, as provided for in the preceding article; . . . . ."

When the Legislature said in Article 7206, V.C.S.; "shall examine, equalize and correct assesments so made by the assessor, and when so revised, equalized and corrected, the same shall be approved" and said in Article 7212, V.C.S. the "Board of equalization shall have power, and it is made their official duty, to supervise the assessment of their respective counties, and, if satisfied that the valuation of any property is not in accordance with the laws of the State, to increase or diminish the same and to affix a proper valuation thereto," it dealt with such matters unquestionably as "county business" appropriately entrusted to the Commissioners' Court acting as a Board of Equalization. In the exercise of this quasi judicial function the Commissioners' Court (Board of Equalization) may do so upon its own initiative without a suggestion from the Tax Assessor.

This view has been confirmed in the Case of Brundett et al vs. Lucas 194 S.W. 614 (Ct. of Civ. App. San Antonio). The following is stated:

"We conclude that the act of 1879 which became article 5120, R.S. 1895, and article 4715 R.S. 1879 were both designed to give the board of equalization the power to equalize assessments in all cases, regardless of whether the assessor or any one else made complaint, and this appears to have been the construction placed thereon by the Supreme Court

when it cited both provisions in support of its
statement with reference to the change made.   In
1907 said article 4715, then No. 5124, was amended
so that the first portion thereof reads as fol-
lows:

"'The boards of equalization shall have
power, and it is made their official duty, to
supervise the assessment of their respective
counties, and, if satisfied that the valuation of
any property is not in accordance with the laws
of the state, to increase or diminish the same
and to affix a proper valuation thereto, as pro-
vided for in article 7569 of this chapter . . .'

"And thus amended, it now appears as article
7570 R.S. 1911.  As it now reads, it still con-
fers ample power to equalize without complaint,
even though the words 'without complaint from any
one' were omitted; but if such omission could be
given the effect contended for by appellee, nev-
ertheless article 7564 gives the board full power
to equalize and makes it the duty of the board to
do so, regardless of whether any complaint has
been made by the assessor or any one else.  This
article received renewed legislative approval in
1909, therefore cannot be said to be affected by
the repeal clause of the act of 1907 had there
been a conflict between the two acts.  We conclude
that the judgment cannot be sustained on the theory
that, as the assessor made no complaint, the action
of the board was not authorized."

We point out that what was formerly Article 5124 dis-
cussed in this case is now Article 7212 and as will be observed
is in identical language, but as it read before amended it
specifically said "without complaint from any one".  However, as
was said in Brundett et al vs. Lucas supra, the power still re-
mains to act "without complaint from any one" under Article
7206 - 7212.  The phrase "Without complaint from any one" was
in the amendment simply eliminated as surplusage.  Article 7212
says "shall have power etc."  Shall have power to do what?
Article 7212 gives the answer as follows:

". . . . . to supervise the assessment of
their respective counties, and, if satisfied that
the valuation of any property is not in accord-
ance with the laws of the State, to increase or
diminish the same and to affix a proper valuation
thereto, . . . . . . ."

A more recent case to the same effect is Wright vs. State (Ct. of Civ. App. Amarillo) 80 S.W. (2d) 1015 from which we quote as follows:

"The action of the equalization board in fixing values is judicial in its nature, and they may fix such values based upon matters within their own knowledge . . .   The general rule is that equalization boards may act upon their own judgment of what is equal and just, and, in the absence of fraud, their determination cannot be challenged if it appears that they have previously inspected the properties with the view of determining values . . . . . "

It does not follow, however, that the Commissioners' Court (Board of Equalization) may increase the values in the exercise of its judicial functions without giving the taxpayer notice and an opportunity to be heard, for such notice is a necessary prerequisite to its jurisdiction, and without it there would be a lack of "due process". Highland Park Independent School District of Dallas County, et al vs. Republican Insurance Company, 80 S.W. (2d) 1053. Hoefling vs. San Antonio 39 S.W. 918 (Supreme Court.) In this latter case the court said:

". . . . . The board has no power to increase that value (referring to the value fixed by the property owner in his rendition) without giving notice to the owner . . . . " (Parenthesis ours)

It follows from the foregoing that we are of the opinion that the Commissioners' Court (Board of Equalization) has the power and authority to raise or lower valuation of property for taxation without the same being initiated by the Tax Assessor, but if the valuation is to be raised notice must be given to the taxpayer of the Board's intention to raise such valuation and give him an opportunity to be heard.

## SUMMARY

The Commissioners' Court (Board of Equalization) has the power to raise property valuation for taxation without its jurisdiction being first invoked by the Tax Assessor. It may act upon its own initiative. If the valuation is increased, however, notice must be given to the taxpayer. Article 7206, V.C.S., Article 7212, V.C.S.; Brundett et al vs. Lucas, 194 S.W. 613, State vs. Wright, 80 S.W. (2d) 1015.

                              Yours very truly,

                       ATTORNEY GENERAL OF TEXAS


                          By:  s/L. P. Lollar
                               L. P. Lollar
                               Assistant

LPL:mmc:mrj:wc


APPROVED MAY 10, 1947
s/Price Daniel
ATTORNEY GENERAL